[No. E014602. Fourth Dist., Div. Two. Nov. 7, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
LASANCE RAVON DOUGLAS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III, IV, V, VI.A, VI.B, VI.C and VI.E.2.

**COUNSEL**

Alisa M. Weisman, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Asssistant Attorney General, Robert M. Foster and Adrianne S. Denault, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**RICHLI, J.**—Defendant Lasance Ravon Douglas (defendant) was convicted of kidnapping for robbery, robbery, forcible oral copulation and rape. Sentence enhancement allegations that he kidnapped the victim for purposes of forcible oral copulation and rape were found true. In this appeal, he contends that:

1. It was unconstitutional for the case to be tried before a municipal court judge, pursuant to a blanket assignment order.

2. Evidence that the victim had expressed fear of being infected with the human immunodeficiency virus, HIV, as a result of the rape was irrelevant and inadmissible hearsay.

3. CALJIC No. 2.71.5, concerning adoptive admissions, erroneously and unconstitutionally permitted the jury to draw adverse inferences from defendant's silence after being given *Miranda*[1] warnings.

4. The trial court imposed upper terms for the sexual offenses based in part on elements of the crimes, a forbidden dual use.

5. The trial court imposed upper terms for the sexual offenses based in part on aggravating factors not supported by the evidence.

---

[1]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

6. The trial court failed to state reasons for its choice of consecutive sentences, and, a fortiori, full consecutive sentences, for the sexual offenses.

7. The imposition of separate and unstayed sentences for kidnapping for robbery and for both kidnapping enhancements constituted multiple punishment in violation of section 654.[2]

8. The trial court erroneously ordered direct victim restitution in an amount to be determined later by the probation officer.

9. The trial court erroneously ordered a $10,000 restitution fine, in light of its finding that defendant was unable to repay the costs of court-appointed counsel.

We hold that once defendant was sentenced for the kidnapping, he could not be given an unstayed sentence on either of the two kidnapping enhancements (issue No. 7). We also hold that the trial court erred in failing to fix the amount of direct victim restitution (issue No. 8). We reject defendant's other contentions, finding no prejudicial error.

I.

FACTUAL BACKGROUND

Defendant's claims on appeal do not require a lengthy or seamless recital of the facts. It suffices to note the following.

On November 29, 1993, the victim, Ms. W., had just parked her car at her home when defendant and a second man approached her. A jacket was draped over defendant's arm so as to hide his right hand; Ms. W. believed he had a gun. Defendant demanded money. She gave him $3, which was all she had. Defendant then demanded her jewelry. She gave him her watch, a ring, and a bracelet.

Defendant and the other man got into the car. Defendant told Ms. W. which way to drive. She heard defendant say to the other man, "You can have her first." The other man said, "I want out of this car. . . . You're carrying this too far, man." At defendant's direction, Ms. W. dropped the other man off.

Defendant then ordered Ms. W. to drive again. Ms. W. was crying, and defendant said, "Don't scream or make any commotion. You're gonna piss

[2]This and all further statutory citations are to the Penal Code, unless otherwise specified.

me off." He also said, "I've just recently gotten out of the penitentiary, and I could use a little white pussy." Defendant told Ms. W. to park the car in a parking lot at the University of California at Riverside (UCR). He made Ms. W. orally copulate him. He told her to remove all her clothes, then raped her.

The car was parked diagonally across several parking spaces, and it was moving up and down. This drew the attention of two UCR police officers on patrol, who went to investigate. Ms. W. flung open the car door and said, "I need help. He's raping me." She also said, "He's got my money and jewelry in his pocket." The police searched defendant; they found Ms. W.'s $3, watch, bracelet, and ring in his pocket. He was also carrying a glass cocaine pipe. He did not have a gun. The officers did not search Ms. W.

Defendant testified on his own behalf. He claimed to have met Ms. W. before the crimes, while with a friend from work named Jason.[3] Ms. W. wanted to buy drugs. He sold rock cocaine to her twice. At her request, these sales took place at the UCR parking lot.

On the night of the crimes, Ms. W. asked him to meet her there a third time. He walked to the parking lot. Ms. W. was there, in her car, and he got in, too. He gave her rock cocaine; in exchange, she gave him the $3 and the jewelry. She put the cocaine in her purse. Then, on her own initiative, she kissed him, orally copulated him, and removed her clothes. They would have had intercourse, but had not done so when the police arrived.

One of the police officers called defendant a rapist, which upset him. Because he was upset, he gave the police a false name. He also told them he did not know Ms. W.'s name; he claimed she had "rolled up" to him and his "partner" earlier that day. He said the ring in his pocket belonged to his wife.[4] When the police asked him to whom the watch and bracelet belonged, he did not reply.

Asked at trial if he told the police Ms. W. had given him the jewelry in exchange for cocaine, defendant said, "I think I did." Immediately thereafter, however, he admitted he did not, saying, "That would be kind of stupid." He also admitted that he never told the police to look in Ms. W.'s purse for drugs.

---

[3]There was no indication that Jason was unavailable as a witness, but the defense did not call him.

[4]Defendant was not married at the time, but he claimed he thought of his fiancée as his wife.

## II.

### PROCEDURAL BACKGROUND

On December 1, 1993, a felony complaint was filed against defendant. On December 15, 1993, after a preliminary hearing, defendant was held to answer. On or about December 23, 1993, the initial information was filed. On February 18, 1994, an amended information was filed charging defendant as follows:

Count 1: kidnapping to commit robbery (§ 209, subd. (b)).

Count 2: robbery (§ 211).

Count 3: forcible oral copulation (§ 288a, subd. (c)).

Count 4: forcible rape (§ 261, subd. (a)(2)).

In connection with count 3 (forcible oral copulation) and count 4 (rape), it was alleged for sentence enhancement purposes that defendant kidnapped the victim for the purpose of committing the charged sexual offenses (§ 667.8, subd. (a) [hereafter kidnapping enhancement]).

On May 2, 1994, the case was called for jury trial. On May 6, 1994, the jury found defendant guilty as charged on all counts; it also found both enhancement allegations true.

On June 15, 1994, the trial court sentenced defendant to a total determinate prison term of 22 years, followed by an indeterminate term of life in prison, calculated as follows:

On count 3 (forcible oral copulation): eight years, the upper term, plus three years on the kidnapping enhancement.

On count 4 (rape): eight years, the upper term, plus three years on the kidnapping enhancement, to be served in full and consecutively.

On count 1 (kidnapping for robbery): life, with the possibility of parole, to be served consecutively.

Execution of sentence on count 2 (robbery) was stayed pursuant to section 654. The court imposed a restitution fine of $10,000, and ordered defendant to pay restitution to the victim in an amount to be determined by the probation officer. On June 16, 1994, defendant filed a timely notice of appeal.

III.-V.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

VI.

Sentencing Issues

A.-C.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

D. *Multiple Punishment in Violation of Section 654.*

■ Defendant contends that the imposition of separate, consecutive, and unstayed sentences on each of (1) count 1 (kidnapping for the purpose of robbery), (2) the kidnapping enhancement to count 3 (forcible oral copulation), and (3) the kidnapping enhancement to count 4 (rape), constituted multiple punishment in violation of section 654. He contends that the trial court could punish him for only one of these three kidnapping-related elements of his conviction.

The People concede that sentence on one of the kidnapping enhancements must be stayed. We agree. In enacting the kidnapping enhancement, the Legislature intended it to be imposed only once per kidnapping, regardless of how many sexual offenses are committed during the kidnapping. (*People v. Hernandez* (1987) 191 Cal.App.3d 1014, 1021-1022 [236 Cal.Rptr. 728].) The People contend, however, that after defendant kidnapped Ms. W. with the intent to rob, he "formed a subsequent intent to commit the sexual assault," and therefore he may be punished separately on count 1 (kidnapping for robbery) and on one or the other (although not both) of the kidnapping enhancements.

■■ Section 654 provides that "[a]n act or omission which is made punishable in different ways by different provisions . . . may be punished under either of such provisions, but in no case can it be punished under more than one." Although the Supreme Court has declined to decide the question (*People v. Jones* (1993) 5 Cal.4th 1142, 1152 [22 Cal.Rptr.2d 753, 857 P.2d 1163]; *People v. King* (1993) 5 Cal.4th 59, 78 [19 Cal.Rptr.2d 233, 851 P.2d 27]), ". . . it is now well-accepted that section 654 applies to enhancements." (*People v. Dobson* (1988) 205 Cal.App.3d 496, 501 [252 Cal.Rptr.

---

*See footnote, *ante*, page 1385.

423]; accord, *People* v. *Moringlane* (1982) 127 Cal.App.3d 811, 817-818 [179 Cal.Rptr. 726].)

"The statute itself literally applies only where such punishment arises out of multiple statutory violations produced by the 'same act or omission.' [Citation.] However, because the statute is intended to ensure that defendant is punished 'commensurate with his culpability' [citation], its protection has been extended to cases in which there are several offenses committed during 'a course of conduct deemed to be indivisible in time.' [Citation.]

"It is defendant's intent and objective, not the temporal proximity of his offenses, which determine whether the transaction is indivisible. [Citations.] . . . [I]f all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once. [Citation.]

"If, on the other hand, defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' [Citation.]" (*People* v. *Harrison* (1989) 48 Cal.3d 321, 335 [256 Cal.Rptr. 401, 768 P.2d 1078].)

The People rely on the principle that multiple punishment may be imposed where the defendant commits one offense with one intent, then, as an afterthought, forms the independent intent to commit a second offense. (*People* v. *Latimer* (1993) 5 Cal.4th 1203, 1212, 1216 [23 Cal.Rptr.2d 144, 858 P.2d 611]; e.g., *People* v. *Stringham* (1988) 206 Cal.App.3d 184, 204-205 [253 Cal.Rptr. 484] [where defendant formed intent to kill kidnapping victim after goal of kidnapping had been achieved, kidnapping and murder were separately punishable]; *People* v. *Burns* (1984) 158 Cal.App.3d 1178, 1181 [205 Cal.Rptr. 356] ["where a defendant kidnaps a victim for one purpose, and then later forms an intent to rape, he may be punished for both kidnaping and rape"].) Here, however, by finding both kidnapping enhancements true, the jury necessarily found that defendant already intended to commit the sexual offenses when the kidnapping began. (*People* v. *Hernandez* (1988) 46 Cal.3d 194, 203-204 [249 Cal.Rptr. 850, 757 P.2d 1013].) Thus, we cannot say that defendant's intent to commit the sexual offenses was an afterthought.

However, multiple punishment also may be imposed where the defendant commits two crimes in pursuit of two independent, even if simultaneous, objectives. (*People* v. *Latimer, supra,* 5 Cal.4th at pp. 1212, 1216; e.g.,

*People* v. *Nelson* (1989) 211 Cal.App.3d 634, 638-639 [259 Cal.Rptr. 549] [where defendants entered house with "discrete objectives" of theft and assault, burglary and assault were separately punishable].) For example, in *People* v. *Booth* (1988) 201 Cal.App.3d 1499 [248 Cal.Rptr. 64], the defendant entered an elderly woman's home and raped her; afterwards, she discovered that money was missing from her purse. (*Id.*, at p. 1501.) Based on this incident, the defendant was convicted and sentenced for both burglary and rape. (*Id.*, at pp. 1500-1501.) The appellate court upheld the sentence: "The facts of the present case support the determination that defendant entered the victims' homes with the intention of achieving two objectives—to rape and to steal. Such dual intent precludes a finding . . . that his entry into their homes and his sexual assaults constituted an indivisible course of conduct to which section 654 is applicable." (*Id.*, at p. 1505, fn. omitted.)

*People* v. *Davis* (1987) 191 Cal.App.3d 1365 [236 Cal.Rptr. 887] is even more pertinent. There the defendant kidnapped the victim by driving her away in her van. While driving, he demanded her money. He stopped the van and raped her; he then drove around some more, until the van ran out of gas. He took more items from the victim's purse, and ran away. (*Id.*, at p. 1367.) Based on this incident, he was convicted of kidnapping for robbery, simple kidnapping, a kidnapping enhancement, robbery, and rape. He was sentenced on the kidnapping for robbery and the rape; sentence was stayed on the simple kidnapping, the enhancement, and the robbery. (*Ibid.*)

On appeal, he contended that because the kidnapping for robbery was also for the purpose of rape—as the jury found, by finding the kidnapping enhancement true—section 654 prohibited punishment on both the kidnapping for robbery and the rape. (191 Cal.App.3d at p. 1369.) The appellate court disagreed: "[A]ppellant entertained multiple criminal objectives, to rob and to rape. Even if the kidnapping was common to both, rape and robbery were in no way merely incidental to each other, and appellant may properly be punished for rape and for kidnapping for the purpose of robbery." (*Ibid.*)

Here, the jury's verdict establishes that defendant kidnapped Ms. W. with the intent to rob, the intent to rape, and the intent to commit forcible oral copulation. His sentence on the kidnapping for robbery count adequately takes into account his culpability both for the underlying kidnapping and for the intended robbery. Under *Davis*, although the kidnapping was common to both the robbery and the sexual offenses, the robbery and the sexual offenses were not incidental to each other. Therefore, the trial court properly punished defendant separately for the kidnapping for robbery and for the sexual offenses.

However, the trial court had no grounds to punish defendant again for the identical kidnapping. Although the kidnapping was committed with the

independent and additional intent to commit sexual offenses, defendant was sentenced separately for each of those sexual offenses, which accounted for his culpability for those offenses. No additional punishment was warranted.

Although the People have not raised it, we have considered another possible justification for imposing unstayed sentences on the kidnapping enhancements. As we discussed in an unpublished portion of this opinion, the trial court has discretion to impose "a full, separate and consecutive term" for specified violent sexual offenses, including forcible rape and forcible oral copulation, "whether or not the crimes were committed during a single transaction." (§ 667.6, subd. (c).) Moreover, the trial court must impose "a full, separate and consecutive term" for the same violent sexual offenses if "between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior." (§ 667.6, subd. (d).)

In *People* v. *Siko* (1988) 45 Cal.3d 820 [248 Cal.Rptr. 110, 755 P.2d 294], the Supreme Court held that subdivision (c) does not create an exception to the "single act" aspect of section 654. It therefore struck down punishment for lewd conduct with a child, in addition to rape and sodomy, where rape and sodomy constituted the only lewd conduct. (45 Cal.3d at pp. 823-826.) More recently, however, in *People* v. *Hicks* (1993) 6 Cal.4th 784 [25 Cal.Rptr.2d 469, 863 P.2d 714], the Supreme Court held that subdivision (c) *does* create an exception to the "indivisible transaction" aspect of section 654. Thus, it upheld multiple punishment for a burglary as well as for each violent sexual offense committed during the burglary. (6 Cal.4th at pp. 791-797.)

Here, as we noted in an unpublished portion of this opinion, the trial court imposed full consecutive sentences on defendant for each of the sexual offenses under subdivision (d). Accordingly, we are presented with the question of whether the trial court could impose multiple punishment for each kidnapping enhancement under the *Hicks* exception to section 654.[10] However, at least on these facts, it could not. There was only one kidnapping; the kidnapping for robbery was the same as the kidnapping which gave rise to the two enhancements. *Hicks*, like *Siko* before it, made it clear that not even section 667.6 authorizes multiple punishment for the same act.

We conclude that the trial court erred in imposing separate and unstayed sentences on the section 667.8 kidnapping enhancements. As defendant has

[10]Earlier, we noted that the kidnapping for robbery and the sexual offenses were not incidental to each other, and hence were separately punishable under *Davis*.

However, even if the kidnapping for robbery and the sexual offenses *were* incidental to each other, the same result follows under the *Hicks* exception to section 654.

requested, we will modify the judgment so as to stay execution of sentence on both enhancements. (See *In re Wright* (1967) 65 Cal.2d 650, 656 [56 Cal.Rptr. 110, 422 P.2d 998].)

E. *Restitution.*

1. *Statutory Background.*

In felony cases, at all relevant times, a trial court could order two types of restitution. (Former Gov. Code, § 13967, Stats. 1992, ch. 682, § 4, effective Sept. 14, 1992, repealed and replaced by Stats. 1994, ch. 1106, § 2, effective Sept. 29, 1994.) First, it was required to order the defendant to pay a restitution fine "of not less than two hundred dollars ($200), subject to the defendant's ability to pay, and not more than ten thousand dollars ($10,000)." (Former Gov. Code, § 13967, subd. (a).) Second, if the victim suffered economic loss as a result of the defendant's criminal conduct, and if probation was denied, the trial court was required to order the defendant to pay direct victim restitution "in the amount of the losses, as determined." (Former Gov. Code, § 13967, subd. (c).)

2. *Failure to Specify the Amount of Direct Victim Restitution.**

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

3. *Imposition of a Restitution Fine Despite Defendant's Inability to Pay Appointed Counsel Costs.*

The probation report recommended a restitution fine in the amount of $10,000. The trial court followed this recommendation. Defendant did not object to the amount of the restitution fine, and did not request a hearing on his ability to pay. The trial court also found that defendant had "no ability to reimburse the County of Riverside for services of court-appointed counsel."

Defendant contends that the $10,000 restitution fine was erroneous in the face of the finding that he did not have the ability to reimburse the costs of appointed counsel. Again, the People never argue that the trial court did not err, only that defendant waived any error by failing to object.

As we mentioned in an unpublished portion of this opinion, we have held that where the probation report recommends imposition of a restitution fine in a particular amount, a defendant who fails to object waives any objection to the recommended amount. (*People* v. *Menius* (1994) 25 Cal.App.4th 1290,

*See footnote, *ante*, page 1385.

1299 [31 Cal.Rptr.2d 15].) Defendant asks us to reconsider these holdings. Stare decisis counsels otherwise.

Even if not waived, defendant's contention lacks merit. Section 987.8, the statute which requires the court to "make a determination of the present ability of the defendant to pay" the costs of appointed counsel (§ 987.8, subd. (b)), further provides that: " 'Ability to pay' . . . shall include, but not be limited to, all of the following:

"(A) The defendant's *present* financial position.

"(B) The defendant's reasonably discernible future financial position. *In no event shall the court consider a period of more than six months from the date of the hearing* for purposes of determining the defendant's reasonably discernible future financial position. *Unless the court finds unusual circumstances, a defendant sentenced to state prison shall be determined not to have a reasonably discernible future financial ability to reimburse the costs of his or her defense.*

"(C) The likelihood that the defendant shall be able to obtain employment *within a six-month period from the date of the hearing.*

"(D) Any other factor or factors which may bear upon the defendant's financial capability to reimburse the county for the costs of the legal assistance provided to the defendant." (§ 987.8, subd. (g)(2), italics added.)

By contrast, a finding of ability to pay a restitution fine may be based on the wages a defendant will earn in prison. (*People* v. *Gentry* (1994) 28 Cal.App.4th 1374, 1377 [34 Cal.Rptr.2d 37]; *People* v. *Frye* (1994) 21 Cal.App.4th 1483, 1487 [27 Cal.Rptr.2d 52].) Moreover, the 10-year statute of limitations on the enforcement of judgments does not apply to a restitution fine. (§ 1214, subd. (c); *People* v. *Gentry, supra,* 28 Cal.App.4th at p. 1377.) Thus, a defendant may lack the "ability to pay" the costs of court-appointed counsel yet have the "ability to pay" a restitution fine. The trial court's findings were not in conflict.

## VII.

### DISPOSITION

The judgment as to prison terms is modified by staying the three-year kidnapping enhancements to counts 3 and 4, said stay to become permanent upon defendant's service of the remainder of his sentence. The judgment as

to direct victim restitution is reversed and remanded with directions to the trial court to determine the appropriate amount of direct victim restitution. In all other respects, the judgment is affirmed.

Ramirez, P. J., and Hollenhorst, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 30, 1996.