Filed 8/14/20  P. v. Edwards CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F078267 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. Nos. F16902751, F16906174) |
| DAVID FRANKLIN EDWARDS, | |
| Defendant and Appellant. | **OPINION** |

## THE COURT*

APPEAL from a judgment of the Superior Court of Fresno County.  Jon N. Kapetan, Judge.

Jared G. Coleman, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler and Lance E. Winters, Chief Assistant Attorneys General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Catherine Tennant Nieto, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*        Before Levy, Acting P.J., Poochigian, J. and Detjen, J.

## INTRODUCTION

Appellant/defendant David Franklin Edwards entered into a negotiated disposition, pleaded guilty to two counts of criminal threats (Pen. Code, § 422)[1] arising from two separate cases and admitted prior conviction allegations, and was sentenced to state prison. On appeal, he argues the matter must be remanded for the court to consider whether it should exercise its discretion and strike the prior serious felony enhancement based on amendments to section 667, subdivision (a) enacted by Senate Bill No. 1393 (2017–2018 Reg. Sess.; Sen. Bill 1393). Next, he contends the matter must be remanded for the court to consider pretrial diversion based on a statute enacted after he entered his pleas and admissions. Finally, he argues the court improperly ordered him to pay restitution fines and other fees in both cases without determining his ability to pay in violation of his constitutional right to due process under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*).

We will conditionally reverse the matter for a limited remand as explained below.

## FACTS[2]

### Case No. F16906174

Defendant and the confidential victim (C.V.) were separated. The C.V. had obtained a protective order for defendant to stay away from her that was effective for three years starting on November 23, 2015.

On January 19, 2016, defendant sent Facebook messages to the C.V. and she responded to them. She was advised to stop responding to the messages and to not provide her phone number to defendant. At a later time, however, she gave her number to defendant.

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

[2]     At the plea hearing, the parties stipulated to the police reports for the factual basis. The following facts are from the police reports as summarized in the probation report.

2

On February 9, 2016, defendant sent numerous text messages to C.V. and threatened to cut her throat, shoot and kill her family, shoot her, cut her body into pieces, and kill C.V.'s male companion. Defendant sent a picture of himself to C.V. with the caption: " 'I'm gonna kill you!' "

The C.V. contacted the police and gave them copies of the text messages. The C.V. said she felt threatened by defendant's threats. The C.V. said when she left defendant, she did so at night while he was asleep and fled to a shelter. Defendant had previously told her that he would kill her if she left him. The C.V. said defendant had trained in mixed martial arts for two to three years, which caused her to fear him.

On April 29, 2016, defendant called the C.V.'s cell phone and left a voicemail stating, " 'Click, click, paw.' " Defendant sent numerous text messages threatening to stab her, and sexually assault her. The C.V. said she felt threatened by defendant and was afraid of him all the time.

### *Charges*

On October 11, 2016, a complaint was filed in case No. F16906174 that charged defendant with count 1, stalking in violation of a restraining order, from January 19 through February 9, 2016 (§ 646.9, subd. (b)); count 2, criminal threats, on February 9, 2016 (§ 422); count 3, misdemeanor disobeying a domestic relations order, from January 19 through February 9, 2016 (§ 273.6, subd. (a)); and committing the following offenses from April 29 to May 1, 2016: count 4, stalking in violation of a restraining order; count 5, criminal threats; and count 6, misdemeanor disobeying a domestic relations order. It was further alleged defendant had one prior strike conviction (§ 667, subds. (b)–(i)).

## Case No. F16902751

On May 2, 2016, at approximately 12:22 a.m., officers responded to a dispatch at a bar in Fresno. The bar's security guard reported a homeless man, later identified as defendant, regularly slept on the sidewalk near the bar. The guard was standing outside

3

the bar, next to the front door, when defendant rode up on his bicycle. The guard told defendant not to ride his bicycle on the sidewalk. Defendant became angry and cursed the guard, using a racial slur. Defendant walked to a pair of boots that were on the ground, reached in, and pulled out a small black semiautomatic handgun. He pointed the gun at the guard and said he was going to shoot him. The guard feared for his life.

Another bar employee reported that he saw defendant pull the gun from the boot, point it at the guard, and threaten to shoot him. He called the police and told defendant the police were on their way. Defendant immediately left the area.

The police found defendant in the vicinity. He was searched and did not have any weapons. The officers searched the area where defendant slept and did not find a weapon.

Defendant was advised of the warnings pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436, and said he was homeless and slept near the bar. Defendant claimed the guard and his coworker said he smelled, and defendant verbally argued with them. Defendant thought he was going to be jumped, so he put his hand in his pocket, held his cell phone, and pretended he was holding something. Defendant said he never threatened to shoot anyone and never took the cell phone out of his pocket. Defendant was arrested and taken into custody.

### *Charges*

On June 17, 2016, a complaint was filed in case No. F16902751 that charged defendant with count 1, criminal threats (Pen. Code, § 422), with the personal use of a firearm (§ 12022.5, subd. (a)), and one prior serious felony conviction (§ 667, subd. (a)) and one prior strike conviction (§ 667, subds. (b)–(i)).

## PROCEDURAL BACKGROUND

### Competency proceedings

On March 30, 2017, the court declared a doubt regarding defendant's competency to stand trial, suspended criminal proceedings pursuant to section 1368, and appointed Dr. Howard Terrell to examine defendant.

On May 1, 2017, Dr. Terrell reported to the court that during the interview with defendant, he was coherent, alert, orientated, friendly, and cooperative. There was no evidence of "thought blocking, response to internal stimuli, mania nor any other evidence of acute psychosis .…" Defendant denied any recent suicidal or homicidal ideation. Defendant said he was homeless and unemployed and was a dropout from the Bulldog gang.

In the course of the report, Dr. Terrell wrote:

"[Defendant] told me he was very recently diagnosed with Bipolar Disorder by a psychiatrist at Fresno County Jail. He is now receiving Lithium, Effexor and Vistaril. He feels the medication has been very helpful with his severe mood swings. He reported numerous episodes of severe and overwhelming depression since childhood, with at least one suicide attempt by hanging. He also reported frequent manic episodes, with dramatically elevated energy levels since childhood. During these natural highs he experiences racing thoughts, rapid speech and the ability to go up to four days without any need for sleep at all. During these manic phases he becomes extremely impulsive, yells, screams and gets into fights. At other times he feels very happy and tells jokes. During some manic phases he experiences auditory hallucinations, where he hears songs being sung by the late Johnny Cash. He reported at least three inpatient psychiatric hospitalizations at the PACT Unit in Fresno because of his severe mood swings. For reasons that are unclear, he was reportedly never told that he had bipolar disorder until his recent incarceration at the Fresno County Jail. He denied being placed on psychotropic medication until very recently at the Fresno County Jail. [¶] He denied ever using street drugs or alcohol at any time in his life." (Emphasis omitted.)[3]

---

[3]     As will be discussed in issue I, *post*, defendant relies on Dr. Terrell's competency report in support of his claim that he was eligible for diversion under section 1001.36.

Dr. Terrell further reported a "diagnostic impression" that defendant had "Bipolar I Disorder" that was "currently under good control with psychotropic medication." (Emphasis omitted.)

Dr. Terrell concluded defendant was mentally competent to stand trial.

> "Although [defendant] has a history consistent with Bipolar I Disorder, with at least three inpatient psychiatric hospitalizations, he appears to be responding well to lithium and other medications. He presently understands the charges against him, understands the workings of a court of law and is presently capable of assisting his attorney in a rational manner for the preparation of a legal defense."

On May 4, 2017, the court reviewed Dr. Terrell's report, found defendant competent to stand trial, and reinstated criminal proceedings.

**Defendant's plea**

On May 30, 2018, defendant entered into a negotiated disposition for a stipulated sentence of 12 years four months in both cases.

In case No. F16902751, based on the bar incident, he pleaded no contest to count 1, criminal threats, admitted the prior strike conviction and prior serious felony enhancement, and the court dismissed the firearm enhancement.

In case No. F16906174, the threats to the C.V., defendant pleaded no contest to count 2, criminal threats, and admitted the prior strike conviction. The court granted the People's motion to dismiss the other counts and allegations in the two cases.

**Sentencing hearing**

On August 28, 2018, the court sentenced defendant to an aggregate second strike term of 12 years four months in prison in both cases.[4]

---

[4] The probation report stated that defendant was interviewed at the jail on June 19, 2018, and stated: " 'I'm sorry for what happened to the victims; but at the same time I am not sorry it happened because I have received mental health here. I am in therapy and on medication. With the bad comes the good. I apologize to the victims and I thank the system for getting me help now.' "

6

In case No. F16902751, based on the bar incident, defendant was sentenced in count 1, criminal threats, to three years, doubled to six years as the second strike term, plus five years for the section 667, subdivision (a) prior serious felony enhancement, for a total of 11 years.

In case No. F16906174, the threats to the C.V., defendant was sentenced to the consecutive term of eight months (one-third the midterm), doubled to 16 months as the second strike term.

In each case, the court imposed a restitution fine of $3,300 (§ 1202.4, subd. (b)) and suspended the parole revocation fine of $3,300 (§ 1202.45). The court also imposed a $40 court security fee (§ 1465.8) and a $30 criminal conviction assessment fee (Gov. Code, § 70373) in each case. Defendant did not object to the court's imposition of the fines and fees.

The court terminated the existing protective order and served defendant with a new criminal protective order not to contact C.V. that was valid for three years (§ 646.9, subd. (k)).

On October 12 and 29, 2018, defendant filed notices of appeal in, respectively, case Nos. F16902751 and F16906174.

## DISCUSSION

### I. The Prior Serious Felony Enhancement

As part of his negotiated disposition, defendant admitted one prior serious felony enhancement and received an additional term of five years pursuant to section 667, subdivision (a).

At the time of the sentencing hearing, the court was required to impose the prior serious felony enhancement and did not have any discretion to dismiss it. (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228.) Effective January 1, 2019, sections 667 and 1385 were amended by Sen. Bill 1393 to remove the prohibitions on dismissing a prior serious felony enhancement. (See Stats. 2018, ch. 1013, §§ 1–2.)

7

In the initial briefing in this case, defendant argued the matter must be remanded for the court to consider whether to dismiss the five-year term imposed for the prior serious felony enhancement, based on the subsequent enactment of Sen. Bill 1393 that amended section 667, subdivision (a). He further argued the amendments were retroactive since his case was not yet final on appeal. In response, the People acknowledged the amendments were retroactive, but argued defendant was effectively challenging the validity of his plea and he was required to obtain a certificate of probable cause, and his failure to do so prevented him from raising this issue on appeal.

In *People v. Stamps* (June 25, 2020, No. S255843) __ Cal.5th __ [2020 Cal. LEXIS 3974] (*Stamps*), the California Supreme Court held that Sen. Bill 1393's amendments to sections 667 and 1385 were retroactive to cases not yet final. *Stamps* further held that a defendant who entered into a plea agreement that included a prior serious felony enhancement is not required to obtain a certificate of probable cause to raise this issue on appeal and request remand for resentencing, as long as his case is not yet final.

However, *Stamps* rejected the argument that on remand, the trial court should be allowed to exercise its discretion to dismiss the prior serious felony enhancement and reduce the defendant's prison term, but otherwise maintain and unilaterally modify the plea agreement to a lesser term. Instead, *Stamps* held that if the court decides to dismiss the prior serious felony enhancement, the prosecution would have to agree to the modification of the plea agreement. Otherwise, the court's "determination would have consequences to the plea agreement," and the prosecution could withdraw from it, or the court could withdraw its prior approval of the agreement. (*Stamps*, *supra*, __ Cal.5th __ [p. 33].) "In light of these potential consequences to the plea agreement, we emphasize that it is ultimately defendant's choice whether he wishes to seek relief under Senate Bill 1393," (*Stamps*, at [p. 34]) and a defendant "should be allowed to make an informed decision whether to seek relief on remand." (*Stamps*, at [p. 35].)

8

We requested supplemental briefing from the parties in light of *Stamps*. The parties agree that remand is appropriate even though defendant did not obtain a certificate of probable cause, and defendant should have the opportunity to request the court to exercise its discretion on the prior serious felony enhancement.

We thus remand the matter for the court to decide whether to dismiss the prior serious felony enhancement, subject to *Stamps*'s holding about the possible consequences to the plea agreement that was reached in this case.

## II.     The Enactment of Section 1001.36

Defendant separately contends his convictions and sentence must be conditionally reversed and the matter remanded for the court to consider whether he should receive pretrial diversion pursuant to section 1001.36, a statute enacted after he entered his pleas in this case.

Section 1001.36 authorizes a pretrial diversion program for defendants with qualifying mental disorders. The statute defines " 'pretrial diversion' " as "the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment …." (§ 1001.36, subd. (c).) The stated purpose of the diversion statute "is to promote all of the following:  [¶] (a) Increased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety.  [¶] (b) Allowing local discretion and flexibility for counties in the development and implementation of diversion for individuals with mental disorders across a continuum of care settings.  [¶]  (c) Providing diversion that meets the unique mental health treatment and support needs of individuals with mental disorders." (§ 1001.35, subds. (a)–(c).)

As originally enacted, section 1001.36 provided that a trial court may grant pretrial diversion if it finds all of the following:  (1) the defendant suffers from a qualifying mental disorder; (2) the disorder played a significant role in the commission of the

9

charged offense; (3) the defendant's symptoms will respond to mental health treatment; (4) the defendant consents to diversion and waives his or her speedy trial right; (5) the defendant agrees to comply with treatment; and (6) the defendant will not pose an unreasonable risk of danger to public safety if treated in the community. (Former § 1001.36, subd. (b)(1)–(6).)

Section 1001.36 was subsequently amended by Senate Bill No. 215 (2017–2018 Reg. Sess.) to specify that defendants charged with certain crimes, such as murder and rape, are ineligible for diversion. (§ 1001.36, subd. (b)(2), as amended by Stats. 2018, ch. 1005, § 1.)[5]

If the defendant makes a prima facie showing that he or she meets all of the threshold eligibility requirements and the defendant and the offense are suitable for diversion, and the trial court is satisfied that the recommended program of mental health treatment will meet the specialized mental health treatment needs of the defendant, then the court may grant pretrial diversion. (§ 1001.36, subds. (a), (b)(3) & (c)(1).) The maximum period of diversion is two years. (*Id*., subd. (c)(3).) If the defendant is subsequently charged with an additional crime, or otherwise performs unsatisfactorily in the assigned program, then the court may reinstate criminal proceedings. (*Id*., subd. (d).) "If the defendant has performed satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion" and "the arrest upon which the diversion was based shall be deemed never to have occurred." (*Id*., subd. (e).)

At the time of the initial briefing in this case, there was a split among appellate courts as to whether section 1001.36 was retroactive to permit remand for a diversion hearing after the defendant had been convicted and sentenced. Based on the conflicting

---

[5]      Defendant's convictions in this case do not render him ineligible for diversion under section 1001.36, subdivision (b)(2).

10

authorities, defendant argued section 1001.36 was fully retroactive and he was entitled to remand for a diversion hearing based on the findings in Dr. Terrell's competency report, while the People asserted the newly enacted statute was not retroactive.

In *People v. Frahs* (2020) 9 Cal.5th 618 (*Frahs*), the California Supreme Court resolved the conflict and held section 1001.36 is fully retroactive to cases not yet final on appeal. Thereafter, we requested supplemental briefing in light of *Frahs*. The parties agree that a conditional reversal and limited remand are required, and that Dr. Terrell's report satisfies defendant's initial burden to make a prima facie showing that he meets minimum requirements of eligibility for diversion. (§ 1001.36, subds. (b)(1), (b)(3).) The People further concede, consistent with *Stamps*, that defendant may raise this issue even though he did not obtain a certificate of probable cause.

On remand, it will be defendant's burden to establish eligibility under all applicable provisions of section 1001.36. If the trial court finds the prerequisites are met, it may grant relief as authorized by the statute. If the trial court finds defendant ineligible and/or unsuitable for diversion, his conditionally reversed convictions and sentence shall be reinstated. (*People v. Frahs*, *supra*, 9 Cal.5th 618.)

### III.    The Restitution Fines and Fees

Defendant next argues the restitution fines and fees were imposed in both cases in violation of his due process rights and must be stricken because he did not have the ability to pay these amounts based on *Dueñas*. Defendant asserts he did not forfeit review of the *Dueñas* issues because the case had not yet been decided at the time of his sentencing hearing and defense counsel could not have anticipated it. In the alternative, defendant requests remand for the trial court to conduct a hearing on his ability to pay.

The People respond that defendant forfeited appellate review of this issue because he failed to object at the sentencing hearing when the court imposed a restitution fine above the statutory minimum.

11

Defendant's due process argument is based on *Dueñas*, which was decided after his sentencing hearing and while this appeal was pending. *Dueñas* held that "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay" before it imposes any fines or fees. (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1164, 1167.)[6]

We disagree and find remand is not required for this issue. As we recently explained in *People v. Aviles* (2019) 39 Cal.App.5th 1055 (*Aviles*), *Dueñas* was wrongly decided and an Eighth Amendment analysis is more appropriate to determine whether restitution fines, fees, and assessments in a particular case are grossly disproportionate and thus excessive. (*Aviles*, *supra*, 39 Cal.App.5th at pp. 1068–1072.) Under that standard, the fines and fees imposed in this case are not grossly disproportionate to defendant's level of culpability and the harm he inflicted, and thus not excessive under the Eighth Amendment. (*Id*. at p. 1072.)

More importantly, even if *Dueñas* applied to this case, defendant has forfeited any challenge to his alleged inability to pay the fines, fees, and assessments. In each case, the court ordered him to pay a restitution fine of $3,300 under section 1202.4, subdivision (b). When the court imposes a restitution fine greater than the $300 statutory minimum amount, "[s]ection 1202.4 expressly contemplates an objection based on inability to pay." (*People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153 (*Frandsen*); *Aviles*, *supra*, 39 Cal.App.5th at p. 1073.)

While *Dueñas* had not been decided at the time of defendant's sentencing hearing, defendant had the statutory right to object to the $3,300 restitution fines and demonstrate his alleged inability to pay, and such an objection "would not have been futile under

---

[6] The California Supreme Court is currently considering whether trial courts must consider a defendant's ability to pay before imposing or executing fines, fees, and assessments; and if so, which party bears the applicable burden of proof. (See *People v. Kopp* (2019) 38 Cal.App.5th 47, 94–98, review granted Nov. 13, 2019, S257844.)

12

governing law at the time of his sentencing hearing." (*Frandsen*, *supra*, 33 Cal.App.5th at p. 1154; *Aviles*, *supra*, 39 Cal.App.5th at pp. 1073–1074.) In addition, any objections to the assessments imposed under section 1465.8 and Government Code section 70373 would not have been futile. "Although both statutory provisions mandate the assessments be imposed, nothing in the record of the sentencing hearing indicates that [the defendant] was foreclosed from making the same request that the defendant in *Dueñas* made in the face of those same mandatory assessments. [The defendant] plainly could have made a record had his ability to pay actually been an issue. Indeed, [he] was obligated to create a record showing his inability to pay the … restitution fine, which would have served to also address his ability to pay the assessments." (*Frandsen*, *supra*, 33 Cal.App.5th at p. 1154; *Aviles*, *supra*, 39 Cal.App.5th at p. 1074.)

Finally, even if defendant did not forfeit the issue, any error under *Dueñas* is necessarily harmless since defendant has the ability to pay the fines, fees, and assessments over the course of his prison sentence. (*Aviles*, *supra*, 39 Cal.App.5th at pp. 1075–1077.)

> " ' "Ability to pay does not necessarily require existing employment or cash on hand." [Citation.] "[I]n determining whether a defendant has the ability to pay a restitution fine, the court is not limited to considering a defendant's *present* ability but may consider a defendant's ability to pay in the future." [Citation.] This include[s] the defendant's ability to obtain prison wages and to earn money after his release from custody. [Citation.]' [Citations.]" (*Aviles*, *supra*, 39 Cal.App.5th at p. 1076.)

We can infer from the instant record that defendant has the ability to pay the aggregate amount of fines and fees imposed in the two cases from probable future wages, including prison wages. (*Aviles*, *supra*, 39 Cal.App.5th at p. 1076; *People v. Douglas* (1995) 39 Cal.App.4th 1385, 1397; *People v. Ellis* (2019) 31 Cal.App.5th 1090, 1094.) There is nothing in the record to show that defendant would be unable to satisfy the fines and fees imposed by the court while serving his prison term, even if he fails to obtain a prison job. While it may take defendant some time to pay the amounts imposed in this

13

case, that circumstance does not support his inability to make payments on these amounts from either prison wages or monetary gifts from family and friends during his prison sentence. (See, e.g., *People v. Lewis* (2009) 46 Cal.4th 1255, 1321; *People v. DeFrance* (2008) 167 Cal.App.4th 486, 505; *People v. Potts* (2019) 6 Cal.5th 1012, 1055–1058.)

We thus conclude that based on the record before this court, defendant has the ability to pay the fines and fees and any error under *Dueñas* is harmless. Having reached this conclusion, we affirm the court's imposition of the fines and fees in this case and find that defendant may not raise these issues when the matter is remanded for resentencing (as explained in issue III, *post*). (See, e.g., *Aviles*, *supra*, 39 Cal.App.5th at p. 1077.)

## DISPOSITION

The judgment is conditionally reversed and the matter is remanded for further proceedings. On remand, the trial court shall determine whether to exercise its discretion to strike or dismiss the prior serious felony conviction enhancement, and the impact of that decision on the plea agreement, consistent with the holding in *Stamps*.

After making its determination, the trial court shall conduct a mental health diversion eligibility hearing pursuant to section 1001.36 and *Frahs*. If the trial court finds defendant meets the eligibility requirements of section 1001.36, the court may grant relief as provided in the statute. In the event defendant is found eligible and successfully completes a diversion program, the court shall dismiss the charges.

However, if the court finds defendant does not meet the requirements of section 1001.36, or if he does not successfully complete the diversion program, then his convictions and sentence shall be reinstated. We express no views concerning whether defendant will be able to show eligibility on remand or whether the trial court should exercise its discretion to grant diversion if it finds him eligible.

14