Filed 4/30/21  P. v. O'Dell CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>ERIC O'DELL,<br><br>　　　Defendant and Appellant. | F077718<br><br>(Kings Super. Ct. No. 17CMS0896)<br><br>**OPINION** |

## THE COURT*

APPEAL from a judgment of the Superior Court of Kings County.  Michael J. Reinhart, Judge.

Erica Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Jennifer M. Poe, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

* Before Levy, Acting P.J., Poochigian, J. and Detjen, J.

## INTRODUCTION

Appellant and defendant Eric O'Dell, an inmate in Corcoran State Prison, was convicted of possession of a sharpened instrument by an inmate (Pen. Code, § 4502, subd. (a))[1] with a prior strike conviction, sentenced to an additional term in prison, and ordered to pay a restitution fine and other fees. On appeal, defendant contends the court improperly ordered him to pay the restitution fine and fees without determining his ability to pay in violation of his constitutional rights to due process and equal protection under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). We affirm.

## FACTS

On October 17, 2015, defendant was waiting to enter the prison's recreational yard. Correctional Officer Stephanie Denman conducted patdown searches and used a handheld metal detector to clear each inmate into the yard. The metal detector sounded off twice when she scanned one of defendant's shoes.

Correctional Officer Raymond Puga, who was standing nearby, searched defendant and asked him to remove his shoes and hand them to Puga. As defendant handed over his shoes, Puga saw something in defendant's left boot that was wrapped in plastic, four or five inches long, and shaped like a cylinder. Defendant grabbed the object from his shoes and ran across the yard.

Officer Denham testified that she saw defendant take the object out of his boot. The object was wrapped in tape or plastic, and it was larger than the palm of defendant's hand.

Officer Puga ordered defendant to get on the ground, but defendant kept running and headed to the urinals in the yard. Defendant made a throwing motion toward a urinal. Defendant may have tried to flush the urinal, and then he got on the ground as ordered.

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

Correctional Officer Justin McIntyre also saw defendant run toward the urinals, try to dispose of an object, and then get on the ground. Defendant was searched, and he did not possess any contraband. However, McIntyre recovered a cylinder shaped object from a urinal that was wrapped in tape or plastic. There was a removable plastic sleeve that covered a sharpened metal tip. McIntyre described the object as "an inmate stabbing type weapon."

**Procedural background**

On September 14, 2017, an information was filed in the Superior Court of Kings County charging defendant with count 1, possession of a sharpened instrument by an inmate, with one prior strike conviction for murder (§§ 187, subd. (a), 667, subds. (b)–(i), 1170.12, subds. (a)–(d)). Defendant pleaded not guilty and denied the allegation.

On May 3, 2018, after a jury trial, defendant was convicted of the charge. He admitted the prior strike conviction.

On June 6, 2018, the court sentenced defendant to one year (one-third the midterm) doubled to two years as the second strike sentence, to be served consecutively to the prison sentence he was currently serving in Imperial County case No. JCF26265.[2]

After the court imposed sentence, it stated that it was going to "announce the fines and fees" and asked the attorneys if they would "waive a specific citation of the code section of the breakdown of the fines and fees." Both attorneys agreed.

"THE COURT: All right. Sir, I'm not going to impose any penal fine, but there's a $40 court operations fee, a $30 court facility funding fee, $300 state restitution fine. A

---

[2] At the time of this offense, defendant was serving a term of 15 years to life for second degree murder, plus 10 years for the firearm enhancement (§ 12022.5, subd. (b)(2)), plus a consecutive term of two years after his conviction in 2009 for possession of a dangerous weapon by an inmate (§ 4502, subd. (a)), and a consecutive term of three years after his conviction in 2011 for battery by a prisoner (§ 4501.5) in Imperial County case No. JCF26265 in 2011.

3.

second separate $300 state restitution fine will be imposed but stayed pending successful completion of parole or Post Release Community Supervision."

The abstract of judgment clarified the court imposed a restitution fine of $300 (§ 1202.4, subd. (b)) and stayed the $300 parole revocation fine (§ 1202.45). The court also imposed a $40 court operations assessment (§ 1465.8) and a $30 criminal conviction assessment (Gov. Code, § 70373).

On June 25, 2018, defendant filed a timely notice of appeal.

**Section 1237.2**

On April 8, 2019, while this appeal was pending, appellate counsel sent a letter to the trial court pursuant to section 1237.2, and requested the court to vacate or stay the restitution fine and fees unless the People proved his ability to pay those amounts, based on the recently decided opinion in *Dueñas.*

On January 30, 2020, the trial court acknowledged it imposed the restitution fines and fees and stated that, to the extent it still had jurisdiction over the case, it denied defendant's request to vacate or stay the restitution fines and fees based on this court's opinion in *People v. Aviles* (2019) 39 Cal.App.5th 1055 (*Aviles*).

## DISCUSSION

Defendant argues that, as in *Dueñas,* the trial court in this case violated his due process rights because it imposed the restitution fines and the fees without determining his ability to pay, and the matter remanded and the amounts stayed until the People prove his ability to pay.

*Dueñas* held that "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay" before it imposes any fines or fees. (*Dueñas, supra*, 30 Cal.App.5th at pp. 1164, 1167.)[3]

---

[3] The California Supreme Court is currently considering whether trial courts must consider a defendant's ability to pay before imposing or executing fines, fees, and

4.

Defendant is correct that he did not forfeit review of this issue since the court imposed the minimum restitution fine of $300, and defendant lacked the statutory authority to object under the governing law at the time of his sentencing hearing. (Cf. *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153–1154.)

However, we disagree with the holding in *Dueñas* and find the matter need not be remanded on this issue. As explained in *Aviles, supra,* 39 Cal.App.5th 1055, we believe *Dueñas* was wrongly decided and an Eighth Amendment analysis is more appropriate to determine whether restitution fines, fees, and assessments in a particular case are grossly disproportionate and thus excessive. (*Aviles*, at pp. 1068–1072.) Under that standard, the fines and fees imposed in this case are not grossly disproportionate to defendant's level of culpability and the harm he inflicted, and thus not excessive under the Eighth Amendment. (*Aviles*, at p. 1072.)[4]

Even if we agreed with *Dueñas,* we would still reject defendant's constitutional claims and find any error arising from the court's failure to make an ability to pay finding was harmless beyond a reasonable doubt since defendant has the ability to pay the fines and fees imposed in this case. (*Chapman v. California* (1967) 386 U.S. 18, 24; *Aviles, supra*, 39 Cal.App.5th at pp. 1075–1077; *People v. Jones* (2019) 36 Cal.App.5th 1028, 1030–1031.)

" ' "Ability to pay does not necessarily require existing employment or cash on hand." [Citation.] "[I]n determining whether a defendant has the ability to pay a

---

assessments; and if so, which party bears the applicable burden of proof. (See *People v. Kopp* (2019) 38 Cal.App.5th 47, 94–98, review granted Nov. 13, 2019, S257844.)

[4] Defendant notes the court stated it was not going to impose "any penal fine." Defendant argues it is reasonable to infer that the court would not have imposed the restitution fines and fees if they were not mandatory. As defendant also notes, however, the restitution fines and fees were mandatory in this case. Moreover, while the court stated it was not imposing "any penal fine," it then proceeded to impose the restitution fines and the two fees, and that also implies that it believed those amounts were not "penal" fines.

restitution fine, the court is not limited to considering a defendant's *present* ability but may consider a defendant's ability to pay in the future." [Citation.] This include[s] the defendant's ability to obtain prison wages and to earn money after his release from custody. [Citation.]' [Citations.]" (*Aviles, supra*, 39 Cal.App.5th at p. 1076.)

We can infer from the instant record that defendant has the ability to pay the aggregate amount of fines and fees from probable future wages, including prison wages. (*Aviles, supra*, 39 Cal.App.5th at p. 1076; *People v. Ellis* (2019) 31 Cal.App.5th 1090, 1094; *People v. Douglas* (1995) 39 Cal.App.4th 1385, 1397.) There is nothing in the record to show that defendant would be unable to satisfy the fines and fees imposed by the court while serving his prison term, even if he fails to obtain a prison job. While it may take defendant some time to pay the amounts imposed in this case, that circumstance does not support his inability to make payments on these amounts from either prison wages or monetary gifts from family and friends during his prison sentence. (See, e.g., *People v. Potts* (2019) 6 Cal.5th 1012, 1055–1057; *People v. Lewis* (2009) 46 Cal.4th 1255, 1321; *People v. DeFrance* (2008) 167 Cal.App.4th 486, 505.)

## DISPOSITION

The judgment is affirmed.