Filed 11/6/20  P. v. Hobbs CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F079079 |
| Plaintiff and Respondent, | |
| v. | (Tuolumne Super. Ct. Nos. CRF56423, CRF58505 & CRF58297) |
| JOSHUA TYLER HOBBS, | |
| Defendant and Appellant. | **OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Tuolumne County.  James A. Boscoe, Judge.

Patrick J. Hennessey, Jr., under appointment by the Court of Appeal, for Plaintiff and Appellant.

Xavier Becerra, Attorney General, Michael P. Farrell, Assistant Attorney General, David Lowe and Clifford E. Zall, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Levy, Acting P.J., Poochigian, J. and Detjen, J.

## INTRODUCTION

Appellant/defendant Joshua Tyler Hobbs pleaded guilty to multiple counts of residential burglary and other offenses. On appeal, he contends the matter must be remanded for the court to impose the indicated sentence that was part of the plea agreement, and the court failed to determine his ability to pay the restitution fines.

We affirm the court's imposition of the restitution fines but remand the matter for resentencing.

## FACTS[1]

**Case No. CRF56423**

On April 1, 2018, Deputy Oliver of the Tuolumne County Sheriff's Department was dispatched to Mr. and Mrs. Graves's house about a residential burglary. Mr. Graves reported he was outside when he saw defendant run out of his garage, carrying a box of items. Mrs. Graves was in the house at the time. Mr. Graves knew defendant's grandfather, and he previously paid defendant to perform yard work at his house. Mr. Graves said he got into his car and followed defendant as he ran into a cul-de-sac and got into an older model white car, put the box in the car's back seat, and drove away.

Mr. Graves reported a drill, a Dremel tool set, and a skill saw were missing from his garage, along with approximately $5,000 worth of Arthur Court brand pewter ornaments and two platters.

Deputy Oliver searched the path that defendant took from Graves's garage to the cul-de-sac and found a black iPhone. Mr. Graves called the telephone number that he had for defendant, and the iPhone rang and showed Mr. Graves's number as the caller. Oliver also found two Christmas ornaments that were taken from the garage.

---

[1] The facts for the underlying offenses are from the preliminary hearing and the probation report.

As Deputy Oliver was interviewing Mr. Graves, he was advised by dispatch that defendant had contacted the sheriff's department and reported that he lost his black iPhone near the Dollar General Store in Soulsbyville and gave the number for the phone. It was the same number that Mr. Graves had for defendant. Deputy Oliver called the number given by defendant, and the iPhone found near Mr. Graves's house again rang.

Deputy Oliver went to defendant's house in Soulsbyville and met him in the driveway. There was an older model white vehicle parked in the driveway. Oliver advised defendant of the warnings pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436 and asked about Mr. Graves's report. Defendant said he had no idea what he was talking about and had been in Soulsbyville that day. Defendant said he lost his iPhone at the Dollar General Store. Oliver told defendant that his cellphone was at the scene of the burglary, and defendant did not respond. Defendant was arrested and taken to the jail.

On October 29, 2018, Mr. Graves reported to Deputy Oliver that defendant's grandfather had returned some of the stolen property to him, which included half of the stolen ornaments. Oliver contacted David Hobbs, defendant's grandfather, who said he confronted defendant about the incident, and defendant initially denied stealing anything. Mr. Hobbs said defendant arranged for him to meet with an unidentified person about the stolen property. Mr. Hobbs went to the meeting and paid several hundreds of dollars to recover the ornaments, but he was not able to recover all of the stolen property.

### The charges

On or about June 1, 2018, an information was filed in the Superior Court of Tuolumne County, case No. CRF56423, charging defendant with count 1, first degree residential burglary of Mr. Graves's house (Pen. Code, §459),[2] with the special allegations that Mrs. Graves, a person other than an accomplice, was present (§ 667.5, subd. (c)), and that Mr. Graves was an elderly or dependent adult whose condition was

---

[2] All further statutory citations are to the Penal Code unless otherwise indicated.

known and reasonably should have been known to defendant (§ 667.9, subd. (a)); and count 2, theft from Mr. Graves, an elder or dependent adult (§ 368, subd. (b)).

**Case No. CRF58297**

Around 5:30 a.m. on November 6, 2018, Deputy Cuellar conducted a traffic stop on a black Honda Civic that did not have on headlights. As Deputy Cuellar walked up to the car, he noticed numerous power tools and construction equipment in the back seat. Jesse Grenland was the driver and defendant was the passenger. Both men appeared nervous. Grenland said they were nervous because they were on probation. Cueller asked for the vehicle's registration. Grenland said it was his father's car, and he had permission to drive it because he was going to work.

Grenland tried to conceal the registration documents but finally gave them to Deputy Cuellar, who learned the Honda was registered to Matthew Bouchard.

A record search confirmed defendant and Grenland were on searchable probation. Deputy Cuellar advised both men that he was going to conduct a probation search of the car. There was a light-colored military backpack on the floor of the front passenger seat, where defendant was sitting, and it contained a pair of blue gloves. There were several construction tools of different makes and models in the back seat. A generator and firefighting equipment were in the trunk. Defendant said the backpack belonged to him. Grenland said the tools belonged to defendant and himself.

In the meantime, Deputy Long contacted Mr. Bouchard and learned the black Honda was an unreported stolen vehicle.

Deputy Cuellar arrested Grenland, advised him of the *Miranda* warnings, and asked about the car. Grenland said he was at a friend's house and defendant arrived. Grenland asked defendant for a ride and defendant agreed. They walked outside to the black Honda; defendant said the car belonged to a friend. Grenland offered to drive. Cuellar asked Grenland whether he thought the car, tools, and equipment were stolen. Grenland said, " 'Yeah, it is stolen. I mean, I think it is stolen, I did not see all the

4.

property in the car until you pulled us over. You have to ask [defendant].' " Grenland said he lied about the car during the traffic stop because he thought Cuellar would let them go if he gave some type of story.

Deputy Cuellar also arrested defendant, advised him of the *Miranda* warnings, and asked about the stolen vehicle and tools. Defendant said he was at the friend's house and Grenland arrived. Grenland offered to give defendant a ride in the black Honda, and they left. Defendant said he did not know about the stolen property.

Mr. Bouchard arrived at the scene, identified the black Honda as his vehicle, and said it had been stolen. He did not recognize any of the equipment. The deputies removed the tools and machinery and released the Honda to Mr. Bouchard.

Defendant and Grenland were taken to jail. At the jail, Deputy Cuellar received permission from Grenland to view text messages on his cell phone. Cuellar read an exchange between Grenland and defendant about trading a generator for "Bob," a term used to refer to heroin. Grenland said defendant took the car and the equipment and did what he had to do to get heroin.

On the same day that defendant and Grenland were arrested, Deputy Long responded to a dispatch about a burglary at Paula Crauthers's house. Ms. Crauthers, a neighbor of Mr. Bouchard, reported several power tools had been stolen the previous night. She later identified some of the power tools found in the black Honda as her stolen property.

Deputy Cuellar responded to another dispatch in the neighborhood and met with A.J. Ford, who reported that he was home with his wife and family when someone entered his attached garage and took his new DeWALT cordless screwdriver set. Mr. Ford said his neighbor, Patrick Castro, had video surveillance footage of the suspect walking on his property with the DeWALT set. Mr. Ford positively identified a cordless screwdriver that had been recovered from the black Honda as his stolen property.

Deputy Cuellar contacted Mr. Castro and obtained the surveillance video. The video showed defendant walking around the homes and vehicles of Mr. Ford and Mr. Castro and leaving with a black box. Defendant was carrying a light-colored military backpack. Mr. Castro said the suspect did not enter his house or steal anything, but he had tampered with his cars.

Deputy Cuellar returned to the jail and showed the video footage to defendant, who looked down and cursed.

Deputy Cuellar returned to Mr. Ford's residence to continue the investigation and was flagged down by Richard Sullivan, another neighbor. He reported his attached garage was burglarized the previous the night, and several Makita and DeWALT tools were stolen. Mr. Sullivan identified several of the power tools found in the black Honda as his stolen property.

As Deputy Cuellar left the area, the dispatcher advised him that Max Gibson, another neighbor, reported a residential burglary. Cuellar met with Mr. Gibson, who said someone had looked through the contents of his vehicle and took a Milwaukee cordless power drill. He identified a power drill that was recovered from the black Honda as his stolen property.

Deputy Long responded to yet another dispatch that property had been stolen from a shed at Mr. and Mrs. Garcia's house. They reported a gas-powered concrete saw and a generator had been taken. Mrs. Garcia later identified the generator found in the black Honda as their stolen property.

***The charges***

On December 5, 2018, a complaint was filed in case No. CRF58297 that charged defendant and Grenland with counts 1 through 4, first degree residential burglary of, respectively, Mr. Gibson, Mr. Sullivan, Mr. Ford, and Ms. Crauthers, with special allegations that a person other than an accomplice was present during the commission of each burglary (§ 667.5, subd. (c)); count 5, second degree burglary of Mr. Garcia's shed;

6.

count 6, unlawfully taking or driving Mr. Bouchard's Honda Civic (Veh. Code, § 10851); and count 7, receiving stolen property, the Honda Civic (§ 496d, subd. (a)).

As to all counts, it was alleged defendant had one prior strike conviction based upon his plea in Mr. Graves's first degree burglary case; and he committed the offenses while he was on bail in that case (§ 12022.1).

**Case No. CRF58505**

On November 9, 2018, Deputy Cuellar was dispatched to Wendy Fromm's residence to investigate a residential burglary. She reported that on November 6, 2018, she walked to her garage and found the garage door was open. Ms. Fromm discovered the door to her vehicle was also open, and it looked like someone had gone through the contents of the car and garage cabinets.

Ms. Fromm said a Black & Decker cordless drill was taken from her garage. Ms. Fromm learned from her neighbor, Mr. Bouchard, that he had been a victim of a vehicle theft the same day she found the garage door was open. Ms. Fromm positively identified her Black & Decker cordless drill that was in the black Honda as her stolen property.

### *The charges*

On January 3, 2019, a complaint was filed in case No. CRF58505 that charged defendant and Grenfeld with count 1, first degree burglary of Ms. Fromm's residence, with the special allegation that a person other than an accomplice was present during the commission of the offense (§ 667.5, subd. (c)); and that defendant had one prior strike conviction (§ 667, subds. (b)–(j)) and one prior serious felony enhancement (§ 667, subd. (a)), based on his conviction for first degree burglary in Mr. Graves' burglary case.

7.

## PLEAS AND SENTENCE

**Case No. CRF56423**

On November 2, 2018, defendant pleaded guilty to all charges in case No. CRF56423, based on the residential burglary of Mr. Graves, and admitted the special allegations.

In unrelated case No. CRM57519, defendant pleaded to a misdemeanor charge of possession of narcotics paraphernalia on July 23, 2018 (Health & Saf. Code, § 11364, subd. (a)).

Defendant requested consideration for drug court. The court advised defendant that the plea would stand if he did not qualify for drug court, and defendant agreed.

**Case Nos. CRF58297 and CRF58505**

On January 28, 2019, the court granted the People's motion to consolidate cases Nos. CRF58297 and CRF58505 for purposes of trial, based on the charges for the stolen black Honda, the multiple residential burglaries, and the theft of the tools found in the stolen car.

On January 29, 2019, defendant entered pleas in the two cases based on the court's indicated term of 14 years eight months. The court stated it would impose that term if it could lawfully do so. The court further stated that if it could not lawfully impose the indicated sentence, defendant would instead receive a term of 17 years four months, and his maximum exposure was 30 years. Defendant acknowledged the possible sentence and agreed to go forward.

The court deemed the complaints in cases Nos. CRF58297 and CRF58505 to be informations. Defendant pleaded guilty to the charged offenses in both cases and admitted the prior strike conviction and an onbail enhancement in case No. CRF58297, and the prior strike conviction and prior serious felony enhancement in case No. CRF58505.

**Sentencing hearing**

On February 28, 2019, the court stated it was going to impose an aggregate term of 17 years four months for all three cases. The court did not mention the indicated sentence of 14 years eight months, and defendant did not object and demand the court imposed the sentence consistent with the plea agreement.

In case No. CRF58297, the vehicle theft and multiple residential burglaries, the court selected count 1 as the principal term, and imposed the lower term of two years, doubled to four years as the second strike term; consecutive terms of two years eight months (one-third of the doubled midterm) for each of counts 2, 3, and 4; consecutive terms of one year four months (one-third the doubled midterm) for each of counts 5 and 6; and stayed the four-year term for count 7. The court dismissed the section 12022.1 enhancement.

In case No. CRF58505, the residential burglary of Ms. Fromm, the court imposed a consecutive term of two years eight months (one-third the doubled midterm) for count 1, and dismissed the prior serious felony enhancement pursuant to section 1385 based on defendant's age, lack of a prior record, and the length of his sentence; and in case No. CRF56423, the burglary of Mr. Graves's house, imposed a concurrent term for count 1, and stayed the term for count 2.

As to all three cases, the court ordered defendant to pay a total of $9,600 in restitution fines (§ 1202.4, subd. (b)), suspended the parole revocation fines of $9,600 (§ 1202.45), and retained jurisdiction to impose victim restitution.

On March 4, 2019, the court filed an order stating the parties had stipulated to direct victim restitution of $5,000 to Mr. Graves (§ 1202.4, subd. (f)).

On March 27, 2019, defendant filed a timely notice of appeal.

## DISCUSSION

### I.  Remand for Resentencing

In his opening brief, defendant argues the matter must be remanded because when he entered into the plea agreement for the three cases, the court gave an indicated sentence of 14 years eight months, and instead imposed an aggregate term of 17 years four months.  Defendant argues the court could have lawfully imposed the indicated sentence by imposing concurrent terms for certain counts, and remand is thus required to conform to the plea agreement by restructuring the aggregate sentence.

In response, the People concede there is a lawful way to impose the indicated sentence of 14 years eight months, and the matter must be remanded but disagree about exactly how the indicated sentence should be computed.  The People assert the court may impose the indicated sentence by dismissing the prior strike conviction for some counts but not for others.  (See, e.g., *People v. Garcia* (1999) 20 Cal.4th 490, 502–504.)

Given the parties' agreement that resentencing is required, we will not address the merits of how to do so and instead remand the matter accordingly.

### II.  The Restitution Fines

Defendant argues the court improperly ordered him to pay a total of $9,600 in restitution fines for the three cases without determining his ability to pay in violation of his constitutional right to due process under *People v. Dueñas* (2019) 30 Cal.App.5th 1157.[3]

The People state that since the matter must be remanded for resentencing, defendant may raise ability to pay challenges to the restitution orders at that time, but his argument must be limited to an Eighth Amendment analysis.  However, we are not

---

[3] The California Supreme Court is currently considering whether trial courts must consider a defendant's ability to pay before imposing or executing fines, fees, and assessments; and if so, which party bears the applicable burden of proof.  (See *People v. Kopp* (2019) 38 Cal.App.5th 47, 94–98, review granted Nov. 13, 2019, S257844.)

required to accept the Attorney General's concession and decline to do so for several reasons. (See, e.g., *People v. Sanders* (2012) 55 Cal.4th 731, 740; *People v. Kim* (2011) 193 Cal.App.4th 836, 847.)

### A. Background

The court imposed restitution fines pursuant to section 1202.4, subdivision (b) for $6,900 in case No. CRF58297, the vehicle theft and multiple residential burglaries; $2,100 in case No. CRF58505, the residential burglary of Ms. Fromm's house; and $600 in case No. CRF56423, the residential burglary of Mr. Graves's house. The court imposed and suspended the same amounts for the probation revocation fines (§ 1202.45).[4]

Also at the sentencing hearing, the court ordered victim restitution of $5,000 pursuant to section 1202.4, subdivision (f), in case No. CRF56423, the burglary of Mr. Graves's house, to be collected by the California Department of Corrections and Rehabilitation and retained jurisdiction to impose victim restitution in the other cases.[5]

On March 4, 2019, the court filed an order in case No. CRF56423 and clarified the parties stipulated to direct victim restitution of $5,000 payable to Mr. Graves, based on the value of the stolen property.

---

[4] Section 1202.4, subdivision (b)(2) states: "In setting a felony restitution fine, the court may determine the amount of the fine as the product of the minimum fine pursuant to paragraph (1) multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted." In this case, the court imposed the restitution fines recommended in the probation report but modified the report's recommended sentence from 33 years to 17 years four months.

[5] While the court imposed victim restitution, restitution fines, and suspended the probation revocation fines, it did not impose the mandatory court operations assessments (§ 1465.8) or the court facilities assessments for each conviction (Gov. Code, § 70373).

### B.     Analysis

As we recently explained in *People v. Aviles* (2019) 39 Cal.App.5th 1055 (*Aviles*), *Dueñas* was wrongly decided and an Eighth Amendment analysis is more appropriate to determine whether restitution fines, fees, and assessments in a particular case are grossly disproportionate and thus excessive.  (*Aviles*, at pp. 1068–1072.)  Under that standard, the fines and fees imposed in this case are not grossly disproportionate to defendant's level of culpability and the harm he inflicted, and thus not excessive under the Eighth Amendment.  (*Aviles*, at p. 1072.)

Next, *Dueñas* was decided on January 8, 2019, and defendant's sentencing hearing was on February 28, 2019.  Defendant thus had the ability to raise a *Dueñas* objection but failed to do so.

Even if *Dueñas* applied to this case, defendant forfeited any challenge to his alleged inability to pay the restitution fines of, respectively, $6,900, $2,100, and $600 that were imposed in each case, under section 1202.4, subdivision (b).  When the court imposes a restitution fine greater than the $300 statutory minimum amount, "[s]ection 1202.4 expressly contemplates an objection based on inability to pay." (*People v Frandsen* (2019) 33 Cal.App.5th 1126, 1153 (*Frandsen*); *Aviles, supra*, 39 Cal.App.5th at p. 1073.)  Defendant thus had the statutory right to object to each restitution fine imposed in the three cases, and such an objection "would not have been futile under governing law at the time of his sentencing hearing. [Citations.]" (*Frandsen, supra*, 33 Cal.App.5th at p. 1154; *Aviles, supra*, 39 Cal.App.5th at pp. 1073–1074.)

As a separate matter, we find any error arising from the court's failure to make an ability to pay finding was harmless beyond a reasonable doubt since defendant has the ability to pay the fines imposed in this case. (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Jones* (2019) 36 Cal.App.5th 1028, 1030–1031.)  " ' "Ability to pay does not necessarily require existing employment or cash on hand." [Citation.]  "[I]n determining whether a defendant has the ability to pay a restitution fine, the court is not

limited to considering a defendant's *present* ability but may consider a defendant's ability to pay in the future." [Citation.] This include[s] the defendant's ability to obtain prison wages and to earn money after his release from custody. [Citation.]' [Citations.]" (*Aviles*, *supra*, 39 Cal.App.5th at p. 1076.)

We can infer from the instant record that defendant has the ability to pay the aggregate amount of fines and fees from probable future wages, including prison wages. (*People v. Ellis* (2019) 31 Cal.App.5th 1090, 1094; *People v. Douglas* (1995) 39 Cal.App.4th 1385, 1397.) There is nothing in the record to show that defendant would be unable to satisfy the fine and fees imposed by the court while serving his lengthy prison sentence, even upon being resentenced to the indicated term, and even if he fails to obtain a prison job. While it may take defendant some time to pay the amounts imposed in this case, that circumstance does not support his inability to make payments on these amounts from either prison wages or monetary gifts from family and friends during his prison sentence. (See, e.g., *People v. Lewis* (2009) 46 Cal.4th 1255, 1321; *People v. Potts* (2019) 6 Cal.5th 1012, 1055–1057; *People v. DeFrance* (2008) 167 Cal.App.4th 486, 505.)

Finally, we reject any possible argument that an ability to pay objection applies to the court's order to pay direct victim restitution of $5,000 to Mr. Graves pursuant to section 1202.4, subdivision (f). The court's order states the parties stipulated to that amount, and defendant thus forfeited any challenge to the victim restitution order. (*People v. Brasure* (2008) 42 Cal.4th 1037, 1075; *People v. May*s (2017) 15 Cal.App.5th 1232, 1237.) More importantly, the rule announced in *Dueñas* does not apply to victim restitution orders. (*People v. Abrahamian* (2020) 45 Cal.App.5th 314, 338; *People v. Evans* (2019) 39 Cal.App.5th 771, 777.)

## DISPOSITION

The matter is remanded for resentencing consistent with the plea agreement. In all other respects, the judgment is affirmed.