Filed 2/17/21  P. v. Smith CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>GENO SMITH,<br><br>    Defendant and Appellant. | F078688<br><br>(Tulare Super. Ct. No. VCF352961)<br><br>**OPINION** |

-ooOoo-

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County.  Brett R. Alldredge, Judge.

Michael L. Pinkerton, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Kimberly A. Donohue, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

[*] Before Hill, P.J., Poochigian, J. and Peña, J.

# INTRODUCTION

Appellant and defendant Geno Smith pleaded guilty to willful infliction of corporal injury to a cohabitant with prior domestic violence offenses (Pen. Code, § 273.5, subd. (f)(2))[1] and admitted prior prison term enhancements (§ 667.5, subd. (b)), pursuant to a negotiated disposition where the court dismissed a prior strike conviction; he was sentenced to eight years in prison.

On appeal, he contends the court improperly ordered him to pay restitution fines and fees without determining his ability to pay in violation of his constitutional right to due process under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*).

Defendant also asserts the court's true findings and sentences imposed for the prior prison term enhancements must be stricken because of the subsequent enactment of Senate Bill No. 136 (2019-2020 Reg. Sess.) (Senate Bill 136) that amended section 667.5, subdivision (b).  The People agree the prior prison term enhancements must be stricken.  However, the People argue that since his convictions resulted from a negotiated plea agreement, the striking of the enhancements would unilaterally modify the plea agreement, and the matter must be remanded for the prosecutor to decide whether to modify or withdraw from the plea agreement, consistent with *People v. Stamps* (2020) 9 Cal.5th 685 (*Stamps*) and *People v. Hernandez* (2020) 55 Cal.App.5th 942, review granted Jan. 27, 2021, S265739 (*Hernandez*).

We will order the enhancements stricken and find the People may not withdraw from the plea agreement, and otherwise affirm.

# FACTS

"On June 28, 2017, officers from the Visalia Police Department were dispatched to a residence regarding an assault.  Upon arrival, officers contacted the victim, S.B., who was visibly upset and crying.  [The officers] observed injuries to the victim's lip, which

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

consisted of a laceration starting from the left side of her lip all the way towards her cheek, approximately three to four inches in length. S.B.'s right eye was red and swollen and it was beginning to darken. Underneath her right eye, was a small abrasion where the skin had been opened, and it was beginning to bruise."

"S.B. stated that the defendant became abusive and assaulted her when she told him she did not want to do anything because she was tired. S.B. reported that the defendant became irate and began punching her numerous times with a closed fist all over her body, including her face. The defendant then grabbed her neck and began strangling her. S.B. stated that while the defendant was strangling her, he placed his mouth around her upper breast area and bit her, causing a large bite mark on her right breast. The defendant continued assaulting S.B. and was telling her that she was not going anywhere. S.B. attempted to move to different areas in the room; however, the defendant was not allowing her to leave. The defendant then grabbed her cell phone to prevent S.B. from contacting law enforcement and left the residence."

## PROCEDURAL BACKGROUND

On June 30, 2017, a felony complaint was filed in the Superior Court of Tulare County charging defendant with count 1, willful infliction of corporal injury to someone with whom he was in a dating relationship resulting in a traumatic condition, within seven years of six previous convictions for domestic violence related offenses (§ 273.5, subd. (f)(2));[2] count 2, assault with force likely to produce great bodily injury (§ 245, subd. (a)(4)); count 3, violation of a protective order with a prior conviction (§ 273.6, subd. (d)); count 4, mayhem (§ 203); and count 5, misdemeanor interference with a wireless communication device (§ 591.5).

---

[2] In count 1, it was alleged his prior six domestic violence related convictions consisted of three convictions for battery of a spouse or cohabitant in 2009, 2011, and 2015 (§ 243, subd. (e)(1)), and three convictions for willful infliction of corporal injury to a spouse or cohabitant in 2011, 2012, 2015 (former § 273.5, subd. (e)(1)).

It was further alleged that defendant had one prior strike conviction for attempted burglary in 1995 (§§ 667, subd. (b)–(i), 1170.12, subds. (a)–(d)); and six prior prison term enhancements (§ 667.5) based on underlying prior convictions for attempted burglary in 1995 (§§ 664, 459), second degree burglary in 2004, petty theft with a prior conviction in 2007, false imprisonment in 2009 (§ 236), and willful infliction of corporal injury in 2012 and 2015.

On August 30, 2017, the prosecution dismissed count 4, mayhem.

**Plea proceedings**

On September 13, 2017, the court convened a hearing and stated the parties had entered into a negotiated disposition. Defense counsel began to recite the terms and said that count 3, felony violation of a protective order, would be reduced to a misdemeanor.

The court interrupted and said defendant also had a newly filed petty theft case and allegedly violated the terms and conditions of Post Release Community Supervision (PRCS) in another case. The court further stated:

> "I want the record to reflect what happened in this case. I did not participate in the plea negotiation. I was informed by both [the prosecutor and defense counsel] of their negotiation. *It is going to result in [defendant] being found eligible by the district attorney's office to seek suitability and sentencing into the Domestic Violence Court. To do that, I'm going to make some findings to support the Court's striking [defendant's] strike conviction.* There's no reason for me to do that other than to get [defendant] into the jurisdiction of the Domestic Violence Court. [Defendant] has one of the longest domestic violence criminal histories I've seen in a very long time. I don't know how many times he's gone to prison. He's on Post Release Community Supervision. [¶] Everything in these cases directs me to sentence him into prison should he change his plea. The only reason I would not do so is based upon a belief or perhaps even a hope by the parties, including, but not limited to, the People, that this program is going to provide [defendant] with some resources necessary that he can see his way clear not to commit a similar crime in the future." (Italics added.)

The prosecutor explained the parties hoped the domestic violence court would provide the rehabilitation and counseling that defendant needed, "and hopefully we don't see him back here again."

Defense counsel said that defendant's prior strike conviction was not for a domestic violence offense, and it was 20 years old, and "[t]hat was something that was mentioned in the negotiation." The court replied defendant had also six prior convictions for violating section 273.5, domestic violence, and section 243, subdivision (e)(1), battery on a cohabitant.

The court advised defendant that if he was allowed to participate in domestic violence court and was successful, "any punishment you would likely receive in this case is going to be reduced significantly if any at all is imposed … but what will not happen is your case will not get dismissed," and his felony conviction that he was about to enter would remain. The court also explained that the district attorney's office found him presumptively eligible for domestic violence court, but a report would be prepared for that court to determine whether he was suitable and would be admitted into the program. Defendant said he understood.

Defendant pleaded guilty to count 1, felony corporal injury with prior domestic violence offenses, and admitted the prior strike conviction and the six prior prison term enhancements.

The court granted the prosecutor's motion to amend count 3 from a felony to a misdemeanor violation of a protective order, and defendant pleaded guilty to the amended charge.

Defendant also pleaded no contest in the newly filed case for petty theft and admitted the violation of his PRCS in the other pending case. The court stated it would trail these cases pending the decision from the domestic violence court.

The court further addressed the terms of the negotiated plea:

5.

"The Court's willingness to accept the negotiated plea is based upon a representation – *and its willingness to strike the strike for purposes of sentencing* is based upon a representation that no sanction in the past has operated to keep the public or a victim any safer or alter [defendant's] conduct, and the prosecution believes this is perhaps [defendant's] last best hope at doing so. So I will strike the strike for purposes of sentencing. Whether or not he gets sentenced into – by the [domestic violence] [c]ourt [j]udge or by this department, he will not be subject to a doubling of his sentence in this case. However, should he be found not suitable, the minutes will reflect that the matter is to be returned to this Court for sentencing. *This Court has made no indicated sentence whatsoever*. [Defendant] has been fully and thoroughly advised of his prison exposure pursuant to his plea." (Italics added.)

The court asked the prosecutor whether she objected to the dismissal of the prior strike conviction "for the purposes I've articulated pursuant to your request?" The prosecutor said no.

**The trial court's additional statements about the negotiated disposition**

On December 21, 2017, the trial court convened a hearing and stated the domestic violence court made an initial finding that defendant was not suitable. However, the domestic violence court questioned the accuracy of the minute order because it did not state reasons for the trial court's dismissal of the prior strike conviction.

In response to these concerns, the trial court made additional findings about the negotiated disposition:

"I will once again state, this Court accepted and approved a negotiated plea that had been worked out through and by [the prosecutor] … and [defense counsel].

"The reasons and rationale were set forth and described and I understood that *the plea negotiated would require this Court to strike his strikes without an objection by the People*. And without any objection being noted, the Court is not required to set forth the rationale in the minutes or on the record.

"[Defense counsel] may have pointed out that, irregardless [*sic*], I may have made some comments at the time the plea was taken about the rationale, but I want to emphasize that the reason that there is no rationale

6.

set forth in the minutes was because the Court accepted a negotiated plea and the striking of the strikes were part of that and were not objected to by the People." (Italics added.)

The court asked the parties whether it needed to make any more findings before it ordered defendant to return to domestic violence court.

"[THE PROSECUTOR]:   Maybe just for good measure that the prison priors are also being stayed as part of that negotiated plea.

"THE COURT:      They're being stricken."

The court ordered defendant to return to the domestic violence court for the suitability hearing.

**Sentencing hearing**

Defendant was subsequently found ineligible for domestic violence court.

On March 29, 2018, defendant returned to the trial court for the sentencing hearing. The probation report recommended the upper term for count 1, with consecutive terms for the prior prison term enhancements, for an aggregate term of eight years.

Defense counsel discussed the history of the case where defendant admitted a felony charge, the prior strike conviction, and prior prison commitments, and the court dismissed the prior strike. Defense counsel said the parties agreed for the court to dismiss the prior strike conviction so he would be eligible for the domestic violence court, but he was found unsuitable. "[F]rom the time that the People essentially negotiated that resolution with me until now, I don't think any of the parties' position has changed," because they agreed he needed counseling and supervision to deal with his domestic violence issues.

Defense counsel asked the court to place defendant on probation with GPS monitoring, mental health and domestic violence counseling, and a stay away order from the victim, consistent with the parties' original agreed upon resolution. In the alternative, defense counsel requested the court impose the midterm and not any prior prison term enhancements.

7.

The court asked why defendant was found ineligible for domestic violence court. The prosecutor and defense counsel said he was assessed for a high risk of recidivism and the judge refused to admit him to the program.[3]

The court understood the parties' frustrations about the case, but it could not change the domestic violence court's determination that defendant was not suitable. The court found there were "essentially no factors in mitigation whatsoever relating to [defendant], save and except the fact that he resolved this at an early stage in the proceedings, and he has expressed remorse for his actions, which I have no reason to doubt." There were a "very large serious and significant set of factors in aggravation," including that the crimes involved great violence, great bodily harm, the threat of great bodily harm or other acts disclosing a high degree of cruelty, viciousness, or callousness. "The defendant has engaged in violent conduct which indicates a serious danger to society. He has prior convictions as an adult that are numerous. He has served six prior prison terms, three of which punishment will not be imposed." Defendant was on PRCS when these crimes were committed, and his prior performance on probation, parole, and supervised release had been unsatisfactory.

> "It should be noted that as part of this Court's already extending to [defendant] any exercise of discretion that would mitigate or be seen as a sign of mercy or compassion was already exercised in the striking of his admitted strike which would have doubled any presumptive prison sentence made today and that strike was done with no objection by the People."

The court imposed an aggregate term of eight years based on the "upper term" of five years for count 1, plus three one-year terms for the prior prison term enhancements; it dismissed the remaining three prior prison term enhancements and did not impose any time for misdemeanor count 3.

---

[3] Defense counsel also said that defendant should have been advised that he could withdraw his plea once he was found ineligible for domestic violence court, but counsel was not going to pursue such a motion. The court asked defense counsel if that was a final decision, and counsel said yes.

The court granted the prosecutor's motion to dismiss the remaining two counts that were alleged in the complaint, consistent with the negotiated disposition.

The court imposed a restitution fine of $300 (§ 1202.4, subd. (b)), based on its determination that it did not have any evidence "that [defendant] will have any ability to pay in excess of the statutory minimum of $300 restitution fine while he is serving this sentence and, therefore, imposes that amount …." The court suspended the parole revocation fine of $300 (§ 1202.45). It also imposed a total of $60 in court facilities assessments (Gov. Code, § 70373) and $80 in court operations assessments (§ 1465.8), and retained jurisdiction over victim restitution. Defendant did not object to the court's imposition of the fines and fees.

**The second sentencing hearing**

On July 18, 2018, the Department of Corrections and Rehabilitation (CDCR) advised the court that it erroneously imposed a five-year "upper" term for count 1, since the statutory triad for a violation of section 273.5, subdivision (f)(2) was two, three, or four years, and requested the court to resentence defendant.

On November 9, 2018, the court held a hearing on CDCR's letter and acknowledged the sentence for count 1 was erroneous. The court further stated that defendant entered his pleas pursuant to a negotiated disposition. Defense counsel clarified "[t]his case was *not a negotiated sentence*. This was a contested sentencing," and the parties never agreed to an eight-year term. The court agreed. (Italics added.)

On December 12, 2018, the court conducted the second sentencing hearing and again imposed an aggregate term of eight years, based on the correct upper term of four years for count 1, plus four one-year terms for the prior prison term enhancements, and dismissed the remaining two prior prison term enhancements. The court imposed the same fines and fees.

On January 14, 2019, defendant filed a timely notice of appeal.

9.

**<u>Postjudgment motion</u>**

On October 2, 2019, while the instant appeal was pending, appellate counsel filed a motion with the court pursuant to section 1237.2, and requested a hearing on defendant's ability to pay the fines and fees pursuant to *Dueñas*, which had been decided after his sentencing hearing.

On December 13, 2019, the court declined to conduct an ability to pay hearing or reduce any of the fines and fees.[4]

## DISCUSSION

**I.      The Court's Imposition of the Restitution Fine, Fees, and Assessments**

Defendant relies on *Dueñas* and argues the restitution fine, fees, and assessments were imposed in violation of his due process rights because he did not have the ability to pay these amounts. Defendant argues the restitution fines must be stayed, the fees and assessments stricken, and the matter remanded for the People to prove his ability to pay these amounts.

We first note that contrary to the People's argument, defendant did not forfeit review of this issue. Subdivisions (c) and (d) of section 1202.4 only permit a party to raise an ability to pay objection when the court imposes a restitution fine above the statutory minimum. In this case, the court imposed the statutory minimum restitution fine of $300 pursuant to section 1202.4, subdivision (b). Under the governing law at the time of the sentencing hearing, defendant could not object to the restitution fine and the other fees. (Cf. *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153–1154.)

---

[4] Defendant's postjudgment letter to the superior court was required to perfect appellate review of his *Dueñas* contentions pursuant to section 1237.2, which states that "[a]n appeal may not be taken by the defendant from a judgment of conviction on the ground of an error in the imposition or calculation of fines, penalty assessments, surcharges, fees, or costs unless the defendant first presents the claim in the trial court at the time of sentencing, or if the error is not discovered until after sentencing, the defendant first makes a motion for correction in the trial court, which may be made informally in writing."

10.

At the sentencing hearing, however, the court stated that it did not have any evidence "that [defendant] will have any ability to pay in excess of the statutory minimum of $300 restitution fine while he is serving this sentence," and imposed that amount. The record thus implies the court made an ability to pay finding and determined the $300 minimum fine was the appropriate amount to impose, along with the total fees of $140.

To the extent the court failed to make an express ability to pay finding, we find any error was harmless beyond a reasonable doubt since defendant has the ability to pay the fine and fees imposed in this case. (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Jones* (2019) 36 Cal.App.5th 1028, 1030–1031.)

> " ' "Ability to pay does not necessarily require existing employment or cash on hand." [Citation.] "[I]n determining whether a defendant has the ability to pay a restitution fine, the court is not limited to considering a defendant's *present* ability but may consider a defendant's ability to pay in the future." [Citation.] This include[s] the defendant's ability to obtain prison wages and to earn money after his release from custody. [Citation.]' [Citations.]" (*People v. Aviles* (2019) 39 Cal.App.5th 1055, 1076 (*Aviles*).)

We can infer from the instant record that defendant has the ability to pay the aggregate amount of fine and fees from probable future wages, including prison wages. (*People v. Ellis* (2019) 31 Cal.App.5th 1090, 1094; *People v. Douglas* (1995) 39 Cal.App.4th 1385, 1397.) There is nothing in the record to show that defendant would be unable to satisfy the fine and fees imposed by the court while serving his lengthy prison term, even if he fails to obtain a prison job. While it may take defendant some time to pay the amounts imposed in this case, that circumstance does not support his inability to make payments on these amounts from either prison wages or monetary gifts from family and friends during his prison sentence. (See, e.g., *People v. Potts* (2019) 6 Cal.5th 1012, 1055–1057; *People v. Lewis* (2009) 46 Cal.4th 1255, 1321; *People v. DeFrance* (2008) 167 Cal.App.4th 486, 505.)

## II.     The Prior Prison Term Enhancements

The court found true the six alleged prior prison term enhancements (§ 667.5, subd. (b)).  At the second sentencing hearing, it imposed the correct upper term of four years for count 1, plus four consecutive one-year terms for the enhancements, for an aggregate term of eight years.

Effective January 1, 2020, Senate Bill 136 amended section 667.5, subdivision (b), to limit the imposition of prior prison term enhancements to only prior terms that were served for sexually violent offenses as defined by Welfare and Institutions Code section 6600, subdivision (b).  (§ 667.5, subd. (b), as amended by Stats. 2019, ch. 590, § 1, eff. Jan. 1, 2020.)

In the initial briefing in this case, defendant argued, and the People conceded, that none of defendant's prior prison terms were served for a sexually violent offense, and the court's true findings and the terms imposed must be stricken.

This court requested supplemental briefing from the parties to address *People v. Stamps, supra,* 9 Cal.5th 685, and *People v. Hernandez, supra*, 55 Cal.App.5th 942 about whether the matter must be remanded for the court to strike the prior prison term enhancements and allow the prosecution to either agree to the modification of the plea agreement or withdraw from it.

### A.     *Stamps* and *Hernandez*

In *Stamps, supra*, 9 Cal.5th 685, the defendant entered into a plea agreement for a specified term of nine years, pleaded no contest to one count of first degree burglary, and admitted a prior strike and a section 667, subdivision (a) serious felony enhancement. The court granted the People's motion to dismiss the other charges and allegations and sentenced him to the specified term of nine years based on the second strike term of four years for burglary, plus five years for the section 667, subdivision (a) prior serious felony enhancement.  While the defendant's appeal was pending, Senate Bill No. 1393 (2017–2018 Reg. Sess.) took effect and amended section 667, subdivision (a) and section 1385,

and gave trial courts the discretion to decide whether to dismiss the prior serious felony enhancement. (*Stamps, supra*, 9 Cal.5th at p. 693.)

*Stamps* held the amendments were retroactive to his case but rejected defendant's argument that, on remand, the trial court could dismiss the five-year prior serious felony enhancement "while otherwise maintaining the plea agreement intact." (*Stamps, supra*, 9 Cal.5th at pp. 693–699, 700.) *Stamps* held the trial court and the prosecution were not bound by the terms of the original plea agreement if, on remand, the trial court decided to dismiss the prior serious felony enhancement that the defendant admitted as part of the plea agreement. (*Id.* at p. 699.)

> "If defendant stood convicted of a crime with an enhancing prior as a result of trial or an open plea of guilty as charged, his case could be remanded for the court to reconsider its sentence in light of its newly conferred authority to strike the enhancement. This case is procedurally different because both parties entered a plea agreement for a specific prison term. [¶] Even when applicable, section 1385 ordinarily does not authorize a trial court to exercise its discretion to strike *in contravention of a plea bargain for a specified term.*" (*Id.* at p. 700, italics added.)

*Stamps* held the defendant entered into the plea agreement for a specified prison term based on the prior serious felony enhancement, and the trial court could not unilaterally modify the terms of that agreement by dismissing the five-year enhancement and restructuring the plea in the absence of the prosecution's agreement. (*Stamps, supra*, 9 Cal.5th at pp. 700–704.) If the court decided to dismiss the prior serious felony enhancement on remand, the prosecution could agree to modify the bargain to "reflect the downward departure in the sentence" or withdraw from the plea agreement, or the court could withdraw its prior approval of the plea agreement. (*Id.* at pp. 707–708.)

In *Hernandez*, the defendant entered into a negotiated disposition for a term of 10 years in prison; the negotiated plea was based on the imposition of two 1-year prior prison term enhancements. On appeal, he argued the prior prison term enhancements had to be dismissed because of the subsequent enactment of Senate Bill 136. The defendant

13.

further argued the prosecution could refile any previously dismissed counts on remand for resentencing, but it was still bound by a maximum term of 10 years based on the terms of the original plea agreement. (*Hernandez, supra*, 55 Cal.App.5th at p. 944.)

*Hernandez* agreed the enhancements had to be dismissed but rejected the defendant's proposed remedy because "the two enhancements were integral to the plea agreement and the specific sentence of 10 years." (*Hernandez, supra*, 55 Cal.App.5th at p. 957.) This court relied on *Stamps* and held that on remand, the People could either agree to modify the plea agreement to the lesser term or withdraw from the agreement, or the court could choose to withdraw its prior approval of the agreement. (*Hernandez,* at pp. 958–959.)

### B.     *Supplemental Briefing*

This court requested the parties to file supplemental briefs about the application of *Stamps* and *Hernandez* to the trial court's dismissal of the prior prison term enhancements.

Defendant acknowledged the holdings of *Stamps* and *Hernandez,* but argued those cases did not apply herein since there was never a plea agreement for an indicated or stipulated sentence of eight years or any term, and the prior prison term enhancements could be dismissed without permitting the prosecutor to withdraw from the plea agreement.

The People replied that even though there was never a stipulated or indicated term of eight years, defendant did not enter an open plea that would have exposed him to the maximum possible sentence. Instead, the parties reached a negotiated disposition, and the prosecutor agreed not to object to defendant's request to dismiss the prior strike conviction, and to dismiss all remaining charges.

### C.     *Analysis*

The parties agree that the prior prison term enhancements must be stricken based on the enactment of Senate Bill 136. The disputed question is whether the matter must be

remanded as in *Stamps* and *Hernandez* for the determination of whether the People should be able to withdraw from the plea agreement.

Defendant was charged with four felonies and one misdemeanor, with one prior strike conviction and six prior prison term enhancements. When defendant entered into a negotiated disposition, he did so pursuant to an agreement that he could move to dismiss his prior strike conviction so he would be eligible for domestic violence court, and the prosecutor would not object if the court granted the motion. At the sentencing hearing, defendant acknowledged the plea agreement also provided that if he were not found suitable for domestic violence court, he would return to the superior court for sentencing.

Based on the court's statements regarding the negotiated disposition, the key element was the prosecutor's agreement that she would not object if the court dismissed the prior strike conviction, for the sole purpose of allowing defendant to be considered for domestic violence court. In contrast to *Stamps* and *Hernandez*, however, the court and the parties did not agree to a stipulated or indicated sentence of any kind if he was returned for sentencing, or a maximum term based on the inclusion of any of the prior prison term enhancements. Indeed, the court repeatedly stated that it had never given an indicated sentence in the case. In addition, the court clarified at the sentencing hearing that it had dismissed the prior strike conviction "as a sign of mercy or compassion" that meant his sentence for the felony offense would not be doubled.

We find that defendant's case does not fall within the narrow category of negotiation dispositions addressed in *Stamps* and *Hernandez* where the prior prison term enhancements were part of the indicated sentence, the enhancements must be stricken, and the prosecutor may not withdraw from the plea agreement in this case.[5]

---

[5] In the initial briefing on this issue, the People requested remand "for the trial court to strike the enhancements and resentence [defendant] within the parameters of the plea agreements and the agreed-upon maximum sentence." As explained above, however, there was no agreed-upon maximum sentence in this case, and the People agreed to that point at oral argument.

## DISPOSITION

The true findings and terms imposed for the section 667.5, subdivision (b) enhancements are stricken. The trial court shall prepare and forward to all appropriate parties a certified copy of an amended abstract of judgment.

In all other respects, the judgment is affirmed.