Filed 4/23/21  P. v. Gonzalez CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>WILLIAM ALFREDO GONZALEZ,<br><br>    Defendant and Appellant. | D077760<br><br><br>(Super. Ct. No. SCS311731) |


APPEAL from a judgment of the Superior Court of San Diego County, Dwayne K. Moring, Judge.  Affirmed.

Paul Stubb Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Elizabeth M. Kuchar, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

A jury found defendant William Alfredo Gonzalez guilty of robbery and driving or taking a vehicle without the consent of the owner. (Pen. Code, § 211; Veh. Code, § 10851, subd. (a).)[1] Gonzalez admitted an allegation that he had a prior conviction for felony theft of an automobile. (§ 666.5, subd. (a).) The court sentenced Gonzalez to a term of four years, with 259 days of presentence custody credits. The court also imposed several fines and fees.

On appeal, Gonzalez seeks remand for consideration of pretrial mental health diversion under section 1001.36 following the Supreme Court's decision in *People v. Frahs* (2020) 9 Cal.5th 618 (*Frahs*). Appellant also requests we stay or strike the fees and fines because the superior court imposed them without conducting an ability-to-pay hearing. In the alternative, Gonzalez contends his trial attorney failed to provide effective assistance of counsel when she failed to seek a determination of his eligibility under *Frahs* and/or failed to request an ability-to-pay hearing before the imposition of the fees and fines.

We conclude that Gonzalez forfeited both claims and has not shown ineffective assistance of counsel. We, therefore, affirm the judgment.

FACTUAL BACKGROUND

A.    *The Vehicle Theft*

On November 5, 2019, the victim drove to work at the Knights Inn hotel in San Ysidro, California, and parked her SUV in front of one of the hotel rooms. At the end of her shift, the victim returned to the parking lot only to realize that her vehicle was missing. Upon watching the hotel's surveillance video, she saw a man enter the vehicle with a purse in his hands

---

[1]    All further unspecified statutory references are to the Penal Code.

shortly after her lunch break and drive away. She did not give permission to anyone to use her vehicle that day.

The victim immediately contacted one of her credit card companies to report a stolen card. During that call, she learned someone made transactions using her card that day at a 7-Eleven store approximately three quarters of a mile away from the Knights Inn. She did not make any purchases that day.

The victim's vehicle was found a few hours later in a Best Buy parking lot in Chula Vista. Her purse was missing, but the police found her driver's license, credit cards, and the spare car key. They also found items in the vehicle that did not belong to the victim, including an identification card with Gonzalez's name, a men's dress shirt, a can of beer, and metal knuckles.

B. *The Best Buy Incident*

At approximately 5:30 p.m. on November 5, 2019, Gonzalez entered the Best Buy store in Chula Vista. The security guard stationed at the front of the store noticed that Gonzalez entered "quickly . . . through the exit doors," "[l]ike angry in a huff," and "acting erratic." When the security guard greeted him, Gonzalez "muttered to himself," cussed, and acted "standoffish."

Gonzalez grabbed a shopping basket and began indiscriminately pulling products from the shelves and throwing them into the basket. While walking through the store, Gonzalez was "out of it," "[l]ike he was on something," walking "[l]ike an angry bull just banging against cages." He was mumbling to himself and waving his hands above and around his head.

Gonzalez's behavior concerned the security guard, who immediately communicated to the other store employees through a walkie talkie, stating, "Keep an eye on this guy right here. He's acting kind of weird."

3

The security guard directed an employee to approach Gonzalez. Gonzalez told the first employee who did so to "F off" and that he didn't need any help. Two other employees approached Gonzalez with the same outcome. When the security guard approached him, Gonzalez became "belligerent." At this point, the store manager directed the security guard to escort Gonzalez out of the store.

As Gonzalez was directed to leave, he began cussing and grabbing more products. When asked to return the products, Gonzalez said, "F off," he's "leaving right now with everything," and "it doesn't matter." By then, the police had already been called.

Gonzalez got as far as the exit doors, past the checkout area, when the security guard blocked him and again asked for the products. Gonzalez attempted to headbutt the security guard and swung the shopping basket at him. Gonzalez told the security guard to let him leave, that he was going to come back with his "homies," and that he was going to start killing everybody.

During this "tussle," Gonzalez began snapping at people with his mouth as if to bite them. Two customers intervened to help, one of them restraining Gonzalez and pulling him to the ground. With Gonzalez on the ground, the security guard tried to take the shopping basket away, at which point Gonzalez bit the security guard's hand and broke skin. Gonzalez then bit one of the customers on the chest while "wrestling around and being difficult." The store merchandise was eventually retrieved from Gonzalez, and he was released. He left the store yelling, "I'm coming back with my homies. I'm going to kill all of you."

C.    *Gonzalez's Arrest*

When Gonzalez left the Best Buy store, he entered the stolen SUV and drove to a different location in the same parking lot near the Walmart store. By the time the police arrived, Gonzalez had already exited the vehicle and was walking towards Walmart.

When the first officer arrived on the scene, he approached Gonzalez with gun drawn and directed him to get on the ground. Gonzalez refused to cooperate and continued towards Walmart, saying, "Sorry, sir. I'm going to go shopping." Because Gonzalez continued to refuse to comply with the first officer's directives, the officer activated his K-9, which immediately caused Gonzalez to get on the ground. During this interaction, a second officer arrived and arrested Gonzalez.

After Gonzalez was detained, one of the officers patted him down and found a key to the stolen SUV. A subsequent search revealed a white crystalline substance loose in Gonzalez's pocket, which the officers on the scene believed was methamphetamine.

The two officers who arrested Gonzalez both had extensive training in drug detection and impairment, and testified that Gonzalez appeared to be under the influence of drugs. They noticed that Gonzalez displayed symptoms consistent with methamphetamine use, including sweating profusely, rapid movement, rigid muscle tone, flexed jaw muscles, rapid speech, constant movement of the fingers, and disheveled appearance.

DISCUSSION

A.    *Eligibility for Pretrial Mental Health Diversion*

Gonzalez seeks a limited remand for consideration of pretrial mental health diversion following the Supreme Court's decision in *Frahs, supra*, 9 Cal.5th 618. We conclude that because section 1001.36 was effective when

5

Gonzalez was charged, he forfeited his claim of eligibility by failing to raise the issue with the trial court. Gonzalez also has not shown that his defense counsel provided ineffective assistance for failing to seek a pretrial mental health eligibility hearing.

1.  *The Request for a Limited Remand Has Been Forfeited*

Effective June 27, 2018, the Legislature enacted a discretionary pretrial diversion program for people with qualifying mental disorders. (§§ 1001.35, 1001.36, added by stats. 2018, ch. 34, § 24; *Frahs, supra*, 9 Cal.5th at p. 626 [discussing enactment of the diversion statute].) A stated purpose of the program, known as "mental health diversion," is to increase the diversion of defendants with mental disorders and mitigate their entry and reentry into the criminal justice system while protecting public safety. (§ 1001.35, subd. (a).)

"As originally enacted, section 1001.36 provided that a trial court may grant pretrial diversion if it finds all of the following: (1) the defendant suffers from a qualifying mental disorder; (2) the disorder played a significant role in the commission of the charged offense; (3) the defendant's symptoms will respond to mental health treatment; (4) the defendant consents to diversion and waives his or her speedy trial right; (5) the defendant agrees to comply with treatment; and (6) the defendant will not pose an unreasonable risk of danger to public safety if treated in the community." (*Frahs, supra*, 9 Cal.5th at pp. 626–627; § 1001.36, subds. (b)(1)(A)–(b)(1)(F).)

Here, Gonzalez was sentenced well after the effective date of the mental health diversion statutes. He did not request mental health diversion at any point during the trial court proceedings. It is well established that the rule of forfeiture applies when a defendant has the opportunity to request a

6

trial court to grant discretionary relief but does not raise the issue until appeal. (Cf. *People v. Trujillo* (2015) 60 Cal.4th 850, 856 [forfeiture after failing to challenge a fee order]; *People v. Carmony* (2004) 33 Cal.4th 367, 375–376 [forfeiture when the defendant failed to seek dismissal pursuant to section 1385]; *People v. Scott* (1994) 9 Cal.4th 331, 353 [forfeiture when the defendant fails to object to discretionary sentencing choices].) Gonzalez failed to avail himself of the mental health diversion program that was fully available to him from the outset. His failure to make a request in the trial court forfeited his claim on appeal.

2.      *No Showing of Ineffective Assistance of Counsel*

In the alternative, Gonzalez argues that his trial counsel was ineffective for failing to request an eligibility hearing for pretrial mental health diversion under section 1001.36. Gonzalez has not met his burden to establish ineffective assistance of counsel.

"An ineffective assistance claim has two components: A [defendant] must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." (*Wiggins v. Smith* (2003) 539 U.S. 510, 521 (*Wiggins*); *Strickland v. Washington* (1984) 466 U.S. 668, 687–696 (*Strickland*).) Both "are mixed questions of law and fact subject to our independent review." (*In re Gay* (2020) 8 Cal.5th 1059, 1073.)

"There are countless ways to provide effective assistance . . . [and] [e]ven the best criminal defense attorneys would not defend a particular client in the same way." (*Strickland, supra,* 466 U.S. at p. 689.) And "to establish deficient performance, a [defendant] must *demonstrate* that counsel's representation 'fell below an objective standard of reasonableness,' " as measured by " 'prevailing professional norms.' " (*Wiggins, supra,* 539 U.S. at p. 521, italics added; see *Bobby v. Van Hook* (2009) 558 U.S. 4, 7.) "When

7

applying this standard, we ask whether any reasonably competent counsel would have done as counsel did. [Citation.] . . . . Judicial review of counsel's performance is deferential; to establish deficient performance, the defendant 'must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." ' " (*In re Gay*, *supra*, 8 Cal.5th at p. 1073; *Harrington v. Richter* (2011) 562 U.S. 86, 105 ["standard for judging counsel's representation is a most deferential one"]; *Bell v. Cone* (2002) 535 U.S. 685, 702.)

Gonzalez's "burden in this regard 'is difficult to carry' in this case, because this is a direct appeal and the record does not disclose the reason for counsel's [actions]. [Citation.] For those reasons, we may reverse '*only* if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation.' " (*People v. Arredondo* (2019) 8 Cal.5th 694, 711, italics added.)[2]

There may well have been reasons why trial counsel chose not to request diversion. "Unlike a later reviewing court, the [trial] attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." (*Harrington v. Richter*, *supra*, 562 U.S. at p. 105.) Trial counsel may have concluded Gonzalez would not have successfully met his burden of proving his eligibility for mental health diversion, especially where there was little or

---

[2] " 'All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding.' " (*People v. Hoyt* (2020) 8 Cal.5th 892, 958; see also *People v. Mayfield* (1993) 5 Cal.4th 142, 188 ["tactical choices presented to us on a silent record . . . are better evaluated by way of a petition for writ of habeas corpus, and on direct appeal we reject them"].)

no evidence that his mental disorder played a significant role in the commission of the charged offenses.

Because we cannot determine on this appellate record why counsel did not request mental health diversion, the issue is better left to habeas corpus, where such questions may be pursued. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.) For purposes of this direct appeal, the claim was forfeited by Gonzalez's failure to raise it below.

B.    *Imposition of Fines and Fees*

At sentencing, the superior court imposed several fines and fees, including a $3,000 restitution fine pursuant to section 1202.4, subd. (b), a $40 court operations assessment pursuant to section 1465.8, and a $30 criminal conviction assessment pursuant to Government Code section 70373. Gonzalez maintains that we should stay or strike the imposed fees because the court did not conduct an ability-to-pay hearing pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*).

In *Dueñas*, the court concluded that due process "requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay before it imposes court facilities and court operations assessments under Penal Code section 1465.8 and Government Code section 70373." (*Dueñas, supra*, 30 Cal.App.5th at p. 1164.) The court also held that "although Penal Code section 1202.4 bars consideration of a defendant's ability to pay unless the judge is considering increasing the fee over the statutory minimum, the execution of any restitution fine imposed under this statute must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine." (*Dueñas, supra*, at p. 1164.)

9

### 1. *Gonzalez Forfeited His Claim Under Dueñas*

Relying on *Dueñas*, Gonzalez asserts that the imposition of the above-listed fines and fees without any findings regarding his ability to pay them violated his right to due process.

The record establishes that Gonzalez did not object to the imposition of the fines and fees when they were imposed. In *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, the court concluded that a similar challenge to imposed fees and fines was forfeited because the defendant had every incentive to object to the imposition of a restitution fine that exceeded the statutory minimum based on inability to pay, and the statute (§ 1202.4, subd. (c)) expressly permitted such a challenge, but the defendant failed to make such an objection. (*Gutierrez, supra*, at p. 1033.) The court also stated, "[a]s a practical matter, if Gutierrez chose not to object to a $10,000 restitution fine based on an inability to pay, he surely would not complain on similar grounds regarding an additional $1,300 in fees." (*Ibid.*)

Applying that same reasoning to this case, we conclude that Gonzalez forfeited his arguments under *Dueñas* by failing to assert an inability to pay objection when the court imposed restitution fines on him exceeding the statutory minimum of $300. (§ 1202.4, subd. (b)(1); see also, *People v. Jenkins* (2019) 40 Cal.App.5th 30, 39–41 [*Dueñas* arguments forfeited where defendant did not object to statutory maximum restitution fee]; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1059, 1061 [same]; *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153–1154 [same].)

### 2. *No Showing of Ineffective Assistance of Counsel*

Lastly, Gonzalez contends that trial counsel was ineffective for failing to request an ability-to-pay hearing before the imposition of the assessments

and the restitution fine.  Again, we conclude Gonzalez has not met his burden to establish he received ineffective assistance.

Gonzalez fails to meet his burden to demonstrate counsel had no tactical purpose for failing to seek an ability-to-pay hearing.  We must therefore assume that this decision was part of defense counsel's strategy. For instance, counsel may have recognized that, as a result of Gonzalez's relative youth, his work history, and his short term of incarceration, that the trial court would have found him able to pay based not only on prison wages but also on post-incarceration earnings.  (§ 1202.4, subd. (d) ["Consideration of a defendant's inability to pay may include his or her future earning capacity."]; *People v. Douglas* (1995) 39 Cal.App.4th 1385, 1397 [trial court may presume a defendant will have the ability to pay the restitution fine from future wages, including those earned in prison].)

Faced with a silent record, we are unable to fairly evaluate counsel's performance.  (*People v. Mendoza Tello*, *supra*, 15 Cal.4th at pp. 266-267.) Without some indication in the record that trial counsel's decision to forego an ability to pay hearing fell below the standard of reasonableness, we will defer to counsel's tactical decision in this case.  (See *People v. Scott* (1997) 15 Cal.4th 1188, 1212; *People v. Holt* (1997) 15 Cal.4th 619, 703; *People v. Lucas* (1995)12 Cal.4th 415, 437.)  This is one of those instances where the evaluation of a claim of ineffective assistance of counsel will have to await a petition for writ of habeas corpus, should the defendant believe there is a viable claim that can be pursued.

11

DISPOSITION

The judgment is affirmed.

HUFFMAN, J.

WE CONCUR:


McCONNELL, P. J.


BENKE, J.