Filed 4/30/21  P. v. Butterfield CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ROBERT BUTTERFIELD,<br><br>    Defendant and Appellant. | F079685<br><br>(Kern Super. Ct. No. DF013649A)<br><br><br>**OPINION** |

### THE COURT*

APPEAL from a judgment of the Superior Court of Kern County.  David Wolf, Judge.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Jessica C. Leal, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

* Before Levy, Acting P.J., Poochigian, J. and Detjen, J.

## INTRODUCTION

Appellant and defendant Robert Butterfield, a prison inmate at the California Department of Corrections and Rehabilitation (CDCR), attacked a physician at the prison clinic with a razor and repeatedly slashed her head and neck. He pleaded guilty to attempted premeditated murder, admitted five prior strike convictions, and was sentenced to a stipulated third strike term of 25 years to life.

On appeal, defendant argues the court abused its discretion when it denied his motion at the sentencing hearing not to impose any fines or fees based on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). We affirm.

## FACTS[1]

On February 5, 2018, defendant arrived at the prison clinic for an appointment with Dr. Omolae Ogun. Defendant entered her office, closed the door, and sat down. Dr. Ogun opened the door and sat down to conduct the appointment. Defendant suddenly stood up and punched Dr. Ogun in the face. Dr. Ogun later reported that she lost consciousness after he punched her. When she regained consciousness, defendant was holding her by the neck, and he was repeatedly hitting and slashing her. Defendant used an inmate-manufactured weapon and slashed her several times on the back of her neck and head. Dr. Ogun tried to push defendant away but was unsuccessful.

Officer Jacob Argueta heard Dr. Ogun screaming and responded to the office. He found defendant face-to-face with Dr. Ogun with his arms wrapped around her neck. Argueta ordered defendant to immediately stop and get down, but defendant ignored the

---

[1] At the plea hearing, the parties stipulated to the probable cause statements and the prison's incident reports for the factual basis for his plea. On June 5, 2020, defendant filed a request for this court to take judicial notice of these documents, attached as Appendix A to his request. The People did not oppose the request. This court deferred ruling on the request pending consideration of this case on the merits.

We grant defendant's request for judicial notice of the documents in Appendix A for the limited purpose of establishing what the parties stipulated to as the factual basis for defendant's plea in this case.

order. Argueta punched defendant in the face. Defendant turned from Dr. Ogun and started to attack Argueta; defendant threw punches and made slashing motions at Argueta. Argueta grabbed defendant's arms and threw him to the floor, but defendant continued to punch and kick Argueta. Argueta later reported that he felt he was "fighting for my life."

A nurse heard the screaming, responded to the room, and saw Dr. Ogun crawling on the floor. The nurse activated her personal alarm device and escorted Dr. Ogun out of the room. When three additional officers responded, they saw Officer Argueta fighting with defendant on the floor. The responding officers had to use physical force and baton strikes to subdue defendant and gain control of his weapon, which was a razor wrapped with plastic between pieces of wood.

Defendant was taken to a holding cell. About an hour later, he made the spontaneous statement: " 'I wanted to kill that bitch, she's in cahoots with mental health not giving me my meds. I was here to kill that bitch.' "

Dr. Ogun and Officer Argueta were transported to Tehachapi Hospital for treatment of their injuries. Officer Argueta had slashes on his right and left arms.

Dr. Ogun was actively bleeding from cuts, lacerations, and slashes on her neck. Dr. Ogun reported defendant repeatedly slashed the left side of her neck in an attempt to cut her jugular vein and throat, and the slashing cut off part of her hair. Dr. Ogun needed eight staples to close the wounds.

**The charges**

On July 23, 2018, a complaint was filed in the Superior Court of Kern County charging defendant with count 1, attempted premeditated murder of Dr. Ogun (Pen. Code, §§ 664, 187, subd. (a), 189); counts 2 and 4, assault with a deadly weapon with malice by a state prison inmate serving a life sentence committed against, respectively, Dr. Ogun and Officer Argueta (§ 4500); counts 3 and 5, assault with a deadly weapon while confined in a correctional institution committed against, respectively, Dr. Ogun and

Officer Argueta (§ 4501, subd. (a)); and count 6, possession of a weapon by an inmate while confined in a state penal institution (§ 4502, subd. (a)).

It was alleged as to count 1 that defendant personally used a deadly or dangerous weapon (§ 12022, subd. (b)(1)), and as to counts 1 through 5, that he inflicted great bodily injury on the victims in the commission of the offenses (§ 12022.7, subd. (a)).

It was further alleged that defendant had five prior strike convictions and four prior serious felony enhancements (§ 667, subd. (a)).

**Plea proceedings**

On April 11, 2019, defendant entered into a negotiated disposition. He pleaded guilty to count 1, attempted premeditated murder of Dr. Ogun, and admitted the five prior strike convictions, for a stipulated sentence of 25 years to life, to be imposed consecutive to the term he was already serving, and dismissal of the remaining charges and allegations with a waiver pursuant to *People v. Harvey* (1979) 25 Cal.3d 754.

Defendant asked to address the court and said: "I want to tell him I'm sorry. I apologize for my actions."[2]

After defendant entered his plea, defense counsel advised the court that he was going to object to the imposition of any fines and fees at the sentencing hearing pursuant to *Dueñas*. The court replied that it would consider the defense motion.

**Defendant's objection to the fines and fees**

On June 26, 2019, defendant filed a motion that objected to the imposition of any fines and fees because he lacked the ability to pay based on the analysis in *Dueñas*. Defendant's motion asserted he was 63 years old; he had been in prison since 1999; he had previously served other prison terms; and he had no actual earning potential to pay any fees.

---

[2] Defendant's apology was directly to "him," perhaps referring only to Officer Argueta and not to Dr. Ogun, who is female.

Defendant's motion was supported by records obtained by the prosecution from CDCR. Defendant asserted these records showed that he had been assigned positions in prison since 1987, "but has not worked a day of it," his only recorded attendance was for 14.5 hours at an educational assignment in 2014 with no pay, and he was listed as being unable to attend for 72 hours. "For every listed assignment since 1997, [defendant] was listed as 'not eligible for state pay.' In 1996 and 1997, he was assigned as a mechanic and assigned to cell door repair, earning $0.15 per hour, and he is listed as having no attendance at those assignments (no reason given), as well as no performance evaluations, and no achievements. In 1995, he was assigned as a yard worker, but was not eligible for state pay, and no attendance was listed. In 1994, he was assigned as a carpenter, for the rate of $0.11 per hour, again with no attendance and no explanation. He was also assigned as a work change porter, but 'not eligible for state pay' in 1994, still with no attendance listed. Finally, in 1987, he was assigned to 'yard crew' at the unenviable rate of $0.08 per hour. No attendance, no explanation."

On July 1, 2019, the prosecution filed opposition and argued the fines and fees could be imposed against defendant, even if he was unable to obtain a prison job, based on *People v. Potts* (2019) 6 Cal.5th 1012 (*Potts*).[3] The prosecution's opposition was supported by documents from CDCR that showed defendant had "a history of money on his books," and he had the ability to pay any amount imposed by the court.

**Sentencing hearing**

On July 24, 2019, the court held the sentencing hearing and began with defendant's objection to the imposition of any fines and fees.

Defense counsel argued that it was unconstitutional to order defendant to pay fines and fees without "formal consideration of whether [he] has a right to pay or not. There is a presumption that the defendant has no right to pay if he does have a [p]ublic [d]efender.

---

[3] We will discuss *Potts* in the discussion below.

[¶]  But in addition to that, the Court is obligated to have a hearing from the documents … obtained from CDC[R].  [¶]  [Defendant] is 63 years old.  He's serving a very lengthy sentence, and now is going to serve another sentence of 25 years to life.  [¶]  My understanding is that he has not had a job since 2002.  He has received no money whatsoever.  And whatever money he does receive, even if he were to have a job, would be taken 40 percent away.  [¶]  Given [defendant's] lack of ability to pay, the fact that there is a long history that he has not been employed in the prison despite his wishes to do so, I would request that the Court strike any fines fees, and restitution in the case."  However, defense counsel did not challenge the documents submitted by the prosecution as to his prison accounts.

The prosecutor replied it was appropriate to impose fines and fees because "defendant's asserted inability to pay is not sufficient to overcome the loss to the victim in this case."

The court acknowledged that defense counsel argued defendant was entitled to a formal hearing and noted that it was conducting such a motion, it heard argument, and it had reviewed the parties' pleadings and supporting exhibits.  Defense counsel agreed.

The court reviewed the *Dueñas* opinion and denied defendant's motion not to impose any fines and fees.  The court found defendant was in "a substantially different position" than the probationer's circumstances in *Dueñas*.  The court also found defendant had the ability to work because he appeared to be an able-bodied person, and his current conviction occurred because he physically knocked down and attacked the victim and a prison guard.  The court further stated that if defendant ever suffered a physical injury that left him unable to work, he should contact the public defender's office "because we can re-address this in the future."

The court relied on *Potts* and found that defendant had the ability to pay fines and fees, work in prison, "[a]nd he is going to be there for a substantial period of time."  The court also found defendant committed a serious offense by assaulting a health care

6.

worker in prison, and the offense could have been a murder if the officer had not intervened.

As for the restitution fine, the court stated it routinely imposed the minimum amount in inmate cases "when it's simple possession of a weapon … or simple assault," but that would be unfair "to all of those inmates when I have an attempted murder [conviction] to give the minimum to many of those folks."

The court noted the maximum restitution fine was $10,000, but found mitigating factors that defendant entered a plea at an early stage of the proceedings and apologized to the victim. The court decided to impose a restitution fine of $5,000 (§ 1202.4, subd. (b)).

The court imposed the stipulated sentence of 25 years to life for attempted premeditated murder, consecutive to the term he was already serving in Los Angeles Superior Court case No. VA052978.[4]

In addition to the $5,000 restitution fine, the court suspended the parole revocation fine of $300 (§ 1202.45), ordered restitution to both Dr. Ogun and Officer Argueta in an amount to be determined (§ 1202.4, subd. (f)), and also imposed a $40 court security assessment (§ 1465.8) and a $30 court facilities assessment (Gov. Code, § 70373).

On July 26, 2019, defendant filed a timely notice of appeal.

## DISCUSSION

Defendant contends the restitution fine and fees must be stricken because the court abused its discretion when it denied his motion and imposed these amounts after making only a "cursory analysis" of his ability to pay, and that finding is not supported by substantial evidence. Defendant asserts that he has "no definite prospects of future

---

[4] In Los Angeles Superior Court case No. VA052978, defendant was convicted of two counts of robbery in 1999; these offenses were alleged as two of his five prior strike convictions.

income," and his violent attack on prison personnel means it is "unlikely that he will be offered prison work assignments" in the future.

*Dueñas* held that "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay" before it imposes any fines or fees. (*Dueñas, supra*, 30 Cal.App.5th at pp. 1164, 1167.)[5] We disagree with the holding in *Dueñas*. As explained in *People v. Aviles* (2019) 39 Cal.App.5th 1055 (*Aviles*), we believe *Dueñas* was wrongly decided and an Eighth Amendment analysis is more appropriate to determine whether restitution fines, fees, and assessments in a particular case are grossly disproportionate and thus excessive. (*Aviles*, at pp. 1068–1072.) Under that standard, the fines and fees imposed in this case are not grossly disproportionate to defendant's level of culpability and thus not excessive under the Eighth Amendment. (*Aviles*, at p. 1072.)

Even if we agreed with *Dueñas*, we would still reject defendant's constitutional claims and find the court properly found defendant has the ability to pay the fines and fees imposed in this case, and any error in failing to hold a lengthier hearing was harmless. (*Chapman v. California* (1967) 386 U.S. 18, 24; *Aviles, supra*, 39 Cal.App.5th at pp. 1075–1077; *People v. Jones* (2019) 36 Cal.App.5th 1028, 1030–1031.)

" ' "Ability to pay does not necessarily require existing employment or cash on hand." [Citation.] "[I]n determining whether a defendant has the ability to pay a restitution fine, the court is not limited to considering a defendant's *present* ability but may consider a defendant's ability to pay in the future." [Citation.] This include[s] the defendant's ability to obtain prison wages and to earn money after his release from custody. [Citation.]' [Citations.]" (*Aviles, supra*, 39 Cal.App.5th at p. 1076.)

---

[5] The California Supreme Court is currently considering whether trial courts must consider a defendant's ability to pay before imposing or executing fines, fees, and assessments; and if so, which party bears the applicable burden of proof. (See *People v. Kopp* (2019) 38 Cal.App.5th 47, 94–98, review granted Nov. 13, 2019, S257844.)

We agree with the trial court that defendant has the ability to pay the aggregate amount of fines and fees from probable future wages, including prison wages. (*Aviles, supra*, 39 Cal.App.5th at p. 1076; *People v. Ellis* (2019) 31 Cal.App.5th 1090, 1094; *People v. Douglas* (1995) 39 Cal.App.4th 1385, 1397.)

Defendant complains the court "failed to explore the issue beyond a superficial assumption that [defendant can] earn money while incarcerated." However, we also agree with the trial court's rejection of this argument based on *Potts, supra,* 6 Cal.5th 1012. The trial court in *Potts* ordered a defendant convicted of capital murder to pay the statutory maximum restitution fine of $10,000, partially based on the probation officer's erroneous statement that a condemned inmate would be assigned a job in prison. At the time of the hearing, the applicable restitution statute permitted the court to consider the defendant's inability to pay but defendant did not object. (*Id*. at p. 1055.) The defendant filed a postjudgment motion for the court to reduce the fine because of the court's mistake and his inability to pay and argued his own source of income in prison was limited to small financial gifts from family and friends. The court denied the motion and found that seizing even a small part of the defendant's income was a minimal burden considering the incredible loss he inflicted to the victim's family. (*Id*. at pp. 1055–1056.)

*Potts* held the trial court abused its discretion when it imposed the fee based on the erroneous belief that a defendant sentenced to death would be permitted to work. However, *Potts* held the error was harmless beyond a reasonable doubt based on the court's findings when it denied the postjudgment motion to modify the fine. (*Potts, supra,* 6 Cal.5th at pp. 1055, 1056.) *Potts* explained that the defendant's alleged inability to pay because he lacked a prison job would be "blunted by the fact that he would retain at least some of the money sent to him" by family and friends. (*Id.* at p. 1056.) The trial court was "permitted to conclude that the monetary burden the restitution fine imposed on [the] defendant was outweighed by other considerations," such as the seriousness and gravity of the offense, and the circumstances of its commission. (*Id.* at pp. 1056–1057.)

9.

There is nothing in the record to show that defendant in this case would be unable to satisfy the restitution fine and fees while serving his prison term of 25 years to life imposed in this case, even if he fails to obtain a prison job, particularly given the prosecution's evidence that he has consistently had money on his "books" while in prison.[6]  (See, e.g., *People v. Potts, supra,* 6 Cal.5th 1012, 1055–1057; *People v. Lewis* (2009) 46 Cal.4th 1255, 1321; *People v. DeFrance* (2008) 167 Cal.App.4th 486, 505.)

Finally, defendant argued in his motion objecting to the restitution fine and fees that the court should find he lacked the ability to pay based on the same standard relied on when a defendant is found unable to repay the costs of appointed representation. However, a court's finding that an indigent defendant is unable to repay the costs of trial representation is based on section 987.8, that contains a specific statutory presumption that a defendant sentenced to more than one year in prison or county jail does not have the ability to reimburse defense costs.  Such a statutory presumption does not apply to whether a defendant has the ability to pay the statutorily mandated restitution fine and fees.  (§ 987.8, subd. (g)(2)(B); *Aviles, supra*, 39 Cal.App.5th at pp. 1074–1075; *People v. Rodriguez* (2019) 34 Cal.App.5th 641, 646.)

---

[6] The court sentenced defendant to 25 years to life in this case, consecutive to the term he was already serving in Los Angeles Superior Court case No. VA052978.  Based on the entirety of the record, it appears defendant was already serving a third strike indeterminate life term in case No. VA052978 when he committed the instant offense.

Defendant admitted the allegations in the complaint that he had five prior strike convictions.  Defendant's prior strikes were for first degree burglary in 1983 and 1986, robbery in 1989, and two more counts of robbery in 1999.

At the time he attempted to murder Dr. Ogun, he was serving the sentence for the two robbery convictions in 1999, which were from case No. VA052978; he already had three prior strikes when he was convicted of those two robberies.  In addition, it was alleged in counts 2 and 4 of the complaint, that he was a person sentenced to life in prison who committed assault with a deadly weapon on Dr. Ogun and Officer Argueta.

## **DISPOSITION**

Defendant's request for judicial notice of the probable cause statements and incident reports is granted for the limited purpose of establishing what the parties stipulated to as the factual basis for defendant's plea in this case.

The judgment is affirmed.